In re James L. HOPE, Debtor.

Wendell W. Webster, Trustee, Plaintiff,

v.

Constance M. Hope, Defendant.

Bankruptcy No. 93–00252.
Adversary No. 97–0033.

United States Bankruptcy Court,
District of Columbia.

March 3, 1999.

Linda M. Correia, Washington, DC, for Plaintiff.

Leslie W. Lickstein, Goodman Gary & Lickstein, P.C., Vienna, VA, for Defendant.

Dennis Early, Office of U.S. Trustee, Alexandria, VA.

### DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO DISMISS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The debtor, James L. Hope, and the defendant, Constance M. Hope, owned as tenants by the entireties real property located at 1511 13th Street, N.W., Washington, D.C. After they divorced, Mr. Hope filed this bankruptcy case. This decision principally concludes (1) that in light of D.C.Code Ann. § 16–910, dealing with equitable distribution of entireties property upon a divorce, Mrs. Hope cannot be the target of a preference claim under 11 U.S.C. § 547(b) [1] or an attack under 11 U.S.C. § 544 [2] with respect to her receipt of the 13th Street property for support obligations pursuant to separation agreements blessed by the divorce decree and (2) that the spouses' unrecorded 1987 Agreement that the wife would receive the equity in the 13th Street property was "made" in 1987 such as to be beyond the reach of 11 U.S.C. § 548(a).[3]

The court will deny the trustee's Motion for Partial Summary Judgment which seeks a declaratory judgment authorizing the sale of the 13th Street property pursuant to 11 U.S.C. § 363(h). The court will partially grant the defendant's Motion to Dismiss as it relates to the 13th Street property: the court will specifically dismiss (1) the preference claim under 11 U.S.C. § 547(b), (2) the claim under 11 U.S.C. § 544, and (3) the fraudulent conveyance claim under 11 U.S.C. § 548(a) regarding any transfer effected under the 1987 Agreement. This will leave any additional transfers of the 13th Street property made or ratified by a 1993 agreement between the Hopes subject to attack as a fraudulent conveyance under § 548(a). The court will deny the defendant's Motion to Dismiss

---

1. Section 547(b) allows the trustee to avoid certain pre-petition transfers on account of antecedent debt that enable a creditor to receive more than the creditor would have otherwise received had no transfer been made and had the estate been liquidated under chapter 7 of the Bankruptcy Code.

2. Section 544 cloaks the trustee with the powers of a hypothetical bona fide purchaser of real property in certain circumstances. *See infra* Part III for the relevant parts of § 544.

3. The parts of § 548(a) of the Code invoked by the trustee provide:

 The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

 (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; and

 . . . .

## FACTS

as to certain personal property that may not have been within the reach of D.C.Code Ann. § 16–910.

On February 25, 1987, the debtor, Mr. Hope, and the defendant, Mrs. Hope, entered into an agreement ("the 1987 Agreement") to divide some of their marital property. According to that agreement, 1723 Riggs Place was to "become the sole property of [the] wife"; 1638 R Street was to "become the sole property of the husband"; and regarding 1511 13th Street, the property at issue here, the agreement directed that "the equity in the property shall become the sole property of the wife."

Six years later, on February 3, 1993, the parties entered into a Separation and Property Settlement Agreement ("the 1993 Agreement") with the intention of formalizing their separation and property arrangements. The 1993 Agreement stated that it incorporated the terms of the 1987 Agreement.

The 1993 Agreement explained:

There are arrearages in the child support payments that were previously agreed to in the February 25, 1987 Agreement in the amount of approximately Sixteen Thousand and Five Hundred Dollars ($16,-500.00). In consideration for the Wife receiving the net proceeds of sale of the jointly-titled property located at 1511 13th Street, N.W., Washington, D.C., ... the Wife agrees to forgive these arrearages.

The Agreement went on to explain how the 13th Street property was to be sold and that the proceeds, after fees and costs, were to be distributed to the wife.

On February 17, 1993,[4] Mrs. Hope obtained a judgment of absolute divorce from Mr. Hope. The Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce ("Divorce Judgment") recites in its findings of fact that the 1993 Agreement "settles and resolves all issues between the parties arising out of their marriage, including custody, support and property rights. There are no issues to be resolved by this court." The Divorce Judgment quotes verbatim some of the provisions from the 1993 Agreement, including the provision quoted above regarding the child support arrearages and the property located at 1511 13th Street. However, the Divorce Judgment further states that the 1993 Agreement "shall not be merged nor incorporated herein."

On March 12, 1993, Mr. Hope filed a petition under chapter 11 of the Bankruptcy Code. The case was later converted to chapter 7. The trustee initiated this adversary proceeding by filing a complaint against Mrs. Hope, seeking to recover and sell the 13th Street property, in addition to recovering certain personal property whose division was ratified by the 1993 Agreement. The trustee contends that the transfer by the debtor of the 13th Street property—if a transfer in fact occurred—was either a preference or a fraudulent transfer. The trustee contends that the transfers of the personal property were fraudulent transfers. Mrs. Hope claims that the 13th Street property, as well as the personal property, were transferred to her by the agreements recited above and were not preferences or fraudulent transfers.

The trustee has filed a Motion for Partial Summary Judgment with respect to Count II of his complaint (for declaratory judgment authorizing the sale of the 13th Street property). The defendant filed an opposition to the motion.[5] The defendant has filed a Motion to Dismiss the complaint which is opposed by the trustee.

## ANALYSIS

The trustee, in his Motion for Partial Summary Judgment, contends that despite the 1993 Agreement,[6] no transfer of the 13th

---

4. The divorce judgment was filed in the Superior Court of the District of Columbia on February 17, 1993 and entered on the docket on February 18, 1993.

5. The opposition additionally requests the relief sought by the defendant's counterclaim against the trustee for specific performance of the Di-

vorce Judgment. Affirmative relief should have been sought by an independent motion.

6. The trustee makes no mention of the 1987 Agreement in his Motion for Partial Summary Judgment.

Street property occurred because no deed was executed as required by D.C.Code Ann. § 45–306(b) (1992) [7] to effectuate the transfer to the defendant. The trustee claims that because the debtor never transferred his undivided ownership interest in the 13th Street property to Mrs. Hope, the trustee should be allowed to sell the property and apply one-half of the proceeds to satisfying the claims against the estate. The trustee believes that the issue of whether the debtor owned an undivided interest in the property is one of law which can be decided by the court on the motions.

The defendant moves to dismiss this proceeding, alleging that at the time Mr. Hope filed his bankruptcy petition, he had no equitable interest in the real or personal property. He had relinquished the property pursuant to the 1987 Agreement, six years earlier. Alternatively, even if the property had not been transferred in 1987, there was no preference or fraudulent transfer that could be avoided by a trustee.

Dismissal will be denied, for reasons set forth in the footnote below, as to the personal property which is not alleged to be tenancy by the entireties property.[8] But the 13th Street property was held as tenancy by the entireties property until shortly before the commencement of the bankruptcy case, thus permitting partial dismissal of the claims regarding it for reasons set forth below.

## I. TENANCY BY THE ENTIRETIES PROPERTY

 The doctrine of tenancy by the entireties has long been established in the District of Columbia. *See Travis v. Benson,* 360 A.2d 506 (D.C.1976); *Settle v. Settle,* 8 F.2d 911 (D.C.Cir.1925). It rests on the common law concept of husband and wife as a single, indivisible unit. "The most significant incidents of this concurrent estate are the unilaterally indestructible right of survivorship; the inability of either spouse, acting alone, to alienate his interest in the property; and the broad immunity from the claims of separate creditors." *Travis,* 360 A.2d at 509. "Moreover, such an estate may be created in personalty as well as realty." *Warman v. Strawberry,* 587 F.Supp. 109, 111 (D.D.C. 1983) (citation omitted). A divorce judgment or an agreement between the parties can dissolve the tenancy by the entireties. *See Hogan v. Hogan,* 250 F.2d 412, 413 (D.C.Cir. 1957). The 13th Street property was held by Mr. and Mrs. Hope as tenants by the entireties, until the Divorce Judgment was entered on February 18, 1993.

### A. The Effect of a Bankruptcy on the Debtor's Interest in Tenancy by the Entireties Property

 Outside of bankruptcy, when a debt is owed by only one spouse, a creditor may not attach, levy upon or sell the property held in tenancy by the entireties. However, this changes once that spouse files a petition for bankruptcy. Under § 541 of the Bankruptcy Code, the bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541 includes in the bankruptcy estate a debtor's interest in entireties property. *Fairfield v. United States (In re Ballard),* 65 F.3d 367, 371 (4th Cir.1995). Once it comes into the estate, a debtor may elect to exempt the entireties property under 11 U.S.C. § 522(b)(2)(B) from the reach of the sole creditors of the debtor.

---

7. Section 45–306(b) provides:
 [N]o estate of inheritance, or for life, or for a longer term than 1 year, in any Property, ... in the District of Columbia, or any declaration or limitation of uses in the same, for any of the estates mentioned, shall be created or take effect, except by deed signed and sealed by the grantor, lessor, or declarant, in person or by power of attorney or by will.

8. In his complaint, the trustee alleges that the transfers ratified in the 1993 Agreement of "Other Property and Liquid Assets" were fraudulent transfers and occurred within one year of the filing of the case. He does not assert a prefer-ence claim with respect to such personal property. ("Other Property" consists of "a trust or trusts, life insurance, bank accounts, stocks and other investments." "Liquid Assets" consists of "bank accounts, savings accounts, certificates of deposit, and stocks, bonds, mutual funds, and other securities registered in each party's name at the time the [1993] Agreement was executed.") Because the complaint implicitly alleges that the debtor owned the assets Mrs. Hope received upon a division of those personal properties, the court cannot dismiss the fraudulent conveyance claims under § 548(a) with respect to these assets.

However, a divorce decree releases property from the unique features of tenancy by the entireties, unless the divorcing spouses agree to preserve the tenancy by the entireties after the divorce. *See Travis,* 360 A.2d at 509; *Finley v. Thomas,* 691 A.2d 1163, 1166 n. 4 (D.C.1997) (dicta); *Benson v. United States,* 442 F.2d 1221, 1225 (D.C.Cir. 1971). Here the agreement cannot be viewed as preserving the tenancy by the entireties, at least as to the equitable interests in the property, because the proceeds of the 13th Street property are all earmarked for Mrs. Hope and there is thus no right of survivorship. If a bankruptcy petition is filed after a divorce, when the property is no longer held in tenancy by the entireties, the property is no longer entitled to the § 522(b)(2)(B) exemption. *Cordova v. Mayer (In re Cordova),* 73 F.3d 38, 41 (4th Cir. 1996).

A caveat to the pervasive effect of § 541(a)(1) is § 541(d) which provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Thus, to the extent that an interest in property is limited in the hands of the debtor, it is equally limited in the hands of the estate.[9] If a debtor has transferred his interest in tenancy by the entireties property, it will not become part of the estate.

B. *The Effect of a Transfer of Tenancy by the Entireties Property Between Spouses*

Property that is held in tenancy by the entireties cannot be transferred by one spouse to a third party, nor can it be partitioned. *See Coleman v. Jackson,* 286 F.2d 98, 99 (D.C.Cir.1960); *American Wholesale Corp. v. Aronstein,* 10 F.2d 991, 992 (D.C.App.1926). However, either spouse can voluntarily convey his or her right in the property to the other spouse. *See Clark v. Clark,* 644 A.2d 449 (D.C.1994); *Aronstein,* 10 F.2d at 992.

Thus, there could have been a transfer of the equity interest to Mrs. Hope in 1987 and possibly again in 1993. That the property was held in tenancy by the entireties, and that the transfer was between spouses, does not affect the existence of a transfer.

Mrs. Hope argues that Mr. Hope's transfer of the property's equity to Mrs. Hope pursuant to the execution of the 1987 and 1993 Agreements would not be a voidable transfer as the property was held as tenancy by the entireties at the time of transfer and therefore could not be reached by Mr. Hope's sole creditors. The court rejects this argument as erroneous, even if the Hopes had remained married.[10] This is because the proper focus in assessing the effect of a transfer for avoidance purposes is what interest the estate would have in the property on the petition date were the transfer avoided.

Exemptions under the Bankruptcy Code are determined on the petition date. By reason of the voluntary transfer, the debtor would have waived the exemption. *See* 11 U.S.C. §§ 522(b)(2), (g), (h), 541(a)(3), and 551.[11] Thus, there could have been an avoidable preference or § 548(a) transfer even though the entireties interest which was transferred was beyond the reach of sole

---

9. *See Grassmueck v. Food Indus. Credit Union,* 127 B.R. 869, 872 (Bankr.D.Or.1991) (finding that estate's interest in vehicle, which had been awarded to debtor's former wife by decree of dissolution that incorporated a property settlement agreement, was limited to bare legal title); *Fandrich v. D & S Hydraulics Co. (In re Fandrich),* 63 B.R. 250, 252 (Bankr.D.N.D.1986) (holding that estate's interest in real property, which had been awarded to debtor's former wife by divorce decree entered on the basis of a

stipulated settlement agreement, was limited to legal title).

10. More importantly, the argument misses the more critical mark of how the property was to be held under District of Columbia law after the divorce. *See infra* Part II.

11. As an additional ground for rejecting arguments like Mrs. Hope's, some decisions point to the transferee's lack of standing to amend the

creditors of Mr. Hope when the transfer was made.[12] Although some cases hold that as a matter of law in the case of § 548(a)(1) there could have been no intent to defraud in such circumstances,[13] the court finds them unpersuasive [14] and, in any event, they would not apply to the trustee's § 547(b) and § 548(a)(2) claims which require no showing of an intent to hinder, delay or defraud.

### C. The Effect of D.C.Code. Ann. § 16–910 on What Rights the Debtor Had on the Petition Date

The disposition of tenancy by the entireties property upon a divorce is governed by D.C.Code Ann. § 16–910 (1981).[15] As relevant here, unless the parties had entered into "a valid ... agreement ... disposing [of] the property," upon the entry of a final decree of divorce the court would have been required, under § 16–910(b), to distribute tenancy by the entireties property "in a manner that is equitable, just and reasonable, after considering all relevant factors." Section 16–910(b) lists a number of relevant factors.

 Section 16–910 contemplates that courts must adjust and apportion property rights (or determine that a valid agreement exists that already does so) "in the same

---

exemptions that the debtor schedules in the case because exemptions are personal to the debtor. However, a dependent could file exemption schedules if the debtor had neglected to file exemption schedules. 11 U.S.C. § 522(1); F.R.Bankr.P. 4003(a).

**12.** *See Fox v. Smoker (In re Noblit),* 72 F.3d 757, 758–59 (9th Cir.1995) (exemptibility is not a defense to a § 547(b) preference action); *Trujillo v. Grimmett (In re Trujillo),* 215 B.R. 200, 204–05 (9th Cir. BAP 1997) (rejecting defense in § 548(a)(2) action that there was no diminution of estate because the property would be exemptible had it not been transferred); *Covey v. United Fed. Sav. & Loan Ass'n (In re Owen),* 104 B.R. 929, 932 (C.D.Ill.1989) (§ 547(b) action); *Waldschmidt v. Sanders (In re Sanders),* 213 B.R. 324, 328–31 (Bankr.M.D.Tenn.1997) (§ 547(b) action); *Goldberg v. Torell (In re Rundlett),* 149 B.R. 353, 357–58 (Bankr.S.D.N.Y.1993) (§ 547(b) action); *Lasich v. Wickstrom (In re Wickstrom),* 113 B.R. 339, 343–46 (particularly 346 nn. 7 & 8), and 350–52 (Bankr.W.D.Mich. 1990) (§ 547(b) and § 548(a) claims); *Warsco v. Ryan (In re Richards),* 92 B.R. 369, 371–72 (Bankr.N.D.Ind.1988) (§ 547(b) action).

**13.** *Lee Supply Corp. v. Agnew (In re Agnew),* 818 F.2d 1284 (7th Cir.1987) (reasoning that a transfer of entireties property from one spouse to the other is not a ground for denial of the discharge under 11 U.S.C. § 727(a)(2) or for setting aside the conveyance under 11 U.S.C. § 548(a)(1) because the transfer does not reduce the amount available for creditors); *Malone v. Short (In re Short),* 188 B.R. 857, 860 (Bankr.M.D.Fla.1995); *Kapila v. Fornabaio (In re Fornabaio),* 187 B.R. 780, 781–83 (Bankr.S.D.Fla.1995); *T.R. Press, Inc. v. Whitcomb (In re Whitcomb),* 140 B.R. 396 (Bankr.E.D.Va.1992); *Kepler v. Weis (In re Weis),* 92 B.R. 816, 822–23 (Bankr.W.D.Wis.1988); *Discenza v. MacDonald (In re MacDonald),* 50 B.R. 255, 259 (Bankr.D.Mass.1985); *Noland v. Turner (In re Turner),* 45 B.R. 649 (Bankr.S.D.Ohio 1985).

**14.** These decisions have been soundly criticized as adopting a "no harm, no foul" rule that §§ 548(a)(1) and 727(a)(2) simply do not embody: if a transfer was made with an intent to delay, hinder or defraud a creditor, §§ 548(a)(1) and 727(a)(2) apply even if, in hindsight, the estate would have been no greater had the transfer not been made. *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1282 (9th Cir.1996); *Davis v. Davis (In re Davis),* 911 F.2d 560, 561 (11th Cir.1990); *Aweida v. Cooper (In re Cooper),* 150 B.R. 462, 466–67 (D.Colo.1993); *Wickstrom,* 113 B.R. at 350–51.

**15.** D.C.Code Ann. § 16–910 provides:

Upon the entry of a final decree of annulment or divorce in the absence of a valid antenuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage ... in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

proceeding in which the divorce decree is entered." *Argent v. Argent*, 396 F.2d 695, 696 (D.C.Cir.1968). "Consequently, in the District title vests immediately after the divorce in the proper parties and there is no need for an interim allocation of interests as tenants in common." *Id.* at 698. The requirement of § 16–910(b) that the court distribute property "in a manner that is equitable, just and reasonable, after considering all relevant factors" does not mean that marital property must be divided equally. *See Burwell v. Burwell*, 700 A.2d 219 (D.C.1997); *Barbour v. Barbour*, 464 A.2d 915 (D.C.1983).

▇▇▇ Alternatively, § 16–910 allows parties to bypass a court determination under § 16–910(b) of the proper distribution of entireties property by entering into an agreement "to deal with their property as they wish." *Alves v. Alves*, 262 A.2d 111, 118 (D.C.1970). Section 16–910 places no restriction on how the parties divide their entireties property pursuant to agreement in lieu of a § 16–910(b) determination, except that the agreement must be "valid." As observed in *Lanahan v. Nevius*, 317 A.2d 521, 523–24 (D.C.1974) (footnote and citations omitted):

> There can be no doubt that the law in this jurisdiction allows and indeed encourages the use of separation agreements to settle the financial affairs of spouses who are not able to maintain a harmonious marriage relationship. Judicial economy is advanced by such agreements, the court not having to expend its time doing for the parties what they presumably are better able to do for themselves, that is, determine what disposition of property and provision for support is fair and reasonable.
>
> Those agreements will be enforced "[i]n the absence of fraud, duress, concealment, or overreaching...."

*See King v. King*, 579 A.2d 659, 662 (D.C. 1990); *Spencer v. Spencer*, 494 A.2d 1279, 1284–85 (D.C.1985).

▇▇▇ Here the parties had entered into an agreement dictating the disposition of the 13th Street property and the Superior Court

treated the agreement as valid. It is thus evident that under District of Columbia law, the Hopes' divorce did not vest Mr. Hope with an equitable interest in the property. Instead, the divorced spouses' interests were governed by the parties' 1987 and 1993 Agreements, as authorized by the District of Columbia statute, leaving Mr. Hope with nothing.

The trustee cites *Sebold v. Sebold*, 444 F.2d 864, 870 (D.C.Cir.1971), for the proposition that the Divorce Judgment dissolved the tenancy by the entireties estate. Applying an earlier version (D.C.Code § 16–910 (1967)) of the current § 16–910 that specifically provided that divorce dissolves the entireties estate in the absence of an agreement to the contrary, *Sebold* held that upon a divorce entered in another state, the spouses' entireties estate regarding District of Columbia property is converted to a tenancy in common instead of being held in limbo pending a court-ordered distribution. *Id.* at 871. The trustee also cites *Scholl v. Scholl*, 152 F.2d 672 (D.C.Cir.1945), for the same proposition.[16]

*Sebold* awarded the appellant spouse an equal share because she had faithfully performed her wedding vows. The trustee, however, cannot draw any comfort from *Sebold*. Even *Sebold* recognized that the property is not necessarily to be divided in equal halves between the two tenants in common, but only as any special equities might warrant. *Sebold*, 444 F.2d at 872, 873 n. 15. In any event, any suggestion in *Sebold* that divorcing couples are to have equal shares is dispelled by *Hairston v. Hairston*, 454 A.2d 1369, 1370–72 (D.C.1983). In *Hairston*, the court treated *Sebold* as abrogated (in regard to spouses having equal shares) by a 1977 amendment to § 16–910 making the provision read in pertinent part essentially as it currently reads. In other words, under § 16–910, the interest of one of the two divorcing spouses in the property is, in the absence of an agreement between the parties, only that amount which the court deter-

---

**16.** *Scholl* applied a statute that was practically the same as the version of § 16–910 applied in *Sebold*.

mines is equitable. *Hairston*, 454 A.2d at 1372.

D.C.Code Ann. § 16–910 allowed the Hopes to determine between themselves what was equitable. Their agreement defines what interests the two spouses still had in the entireties property.

## II. THE IMPACT OF § 16–910 AND THE DIVORCE JUDGMENT ON AVOIDANCE OF THE TRANSFERS ARISING UPON THE EXECUTION OF THE 1987 AND 1993 AGREEMENTS

The Hopes' pre-petition divorce and the consequent intervention of § 16–910 renders moot Mrs. Hope's argument that there should be no avoidance because Mr. Hope's sole creditors could not reach entireties property.[17] Had no pre-petition transfer been made, the equitable interests in the property would no longer be held in tenancy by the entireties on the petition date (the parties not having agreed to continue the entireties estate as to the equitable interests) and, thus, even under District of Columbia law, the property would no longer be reserved for joint creditors only.

But the intervention of the divorce was a two-edged sword. It terminated the entireties estate (assuming the earlier transfers are disregarded), but the interests of the divorced spouses in the 13th Street property then became subject to D.C.Code Ann. § 16–910. As addressed next, the intervention of § 16–910 controls in large part the resolution of the trustee's attempts to avoid under the Bankruptcy Code earlier transfers occurring prior to the divorce.

### A. Whether a Transfer Occurs When There Is a Change in Ownership Pursuant to a Divorce Decree

Even if the transfers that were effected upon the execution of the 1987 and 1993 Agreements (while the Hopes were still married) were avoided, the later intervention of the Hopes' divorce would have reinstated the same changes in ownership. Under D.C.Code Ann. § 16–910, Mr. Hope was not entitled to any part of the equity of the 13th Street property after the divorce because the Hopes had agreed as part of the divorce proceeding that, as provided by the earlier agreements, all the equity would go to Mrs. Hope. So if the disposition of the Divorce Judgment cannot be undone, it does the trustee no good to avoid the earlier transfers. Accordingly, the court turns next to whether the Divorce Judgment's approval of the earlier transfers can be set aside.

#### 1. A Collusive or Constructively Fraudulent Divorce Decree Can Be Attacked as a Transfer.

If a disposition of property pursuant to a divorce decree does not constitute a transfer, then the changes in ownership that it effects cannot be avoided. But it is now well settled that a transfer of property pursuant to a collusive divorce decree or property settlement intended to hinder, delay or defraud creditors (or pursuant to a divorce decree or property settlement for inadequate consideration, leaving the debtor insolvent) constitutes a "transfer" as defined under § 101(54)[18] of the Bankruptcy Code.[19]

---

17. The case that the defendant cites in support of her position can be distinguished from the facts at hand. It concerns a debtor who filed a bankruptcy petition while she was married. *Whitcomb*, 140 B.R. at 396.

18. Section 101(54) provides:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption[.]

19. *Britt v. Damson*, 334 F.2d 896, 902 (9th Cir. 1964), *cert. denied*, 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965) (divorce decree; decided un-

der Bankruptcy Act); *Conti–Commodity Servs., Inc. v. Clausen (In re Clausen)*, 44 B.R. 41 (Bankr.D.Minn.1984) (divorce decree; *see Gray v. Snyder*, 704 F.2d 709 (4th Cir.1983) (separation agreement); *In re Chappel*, 243 F.Supp. 417 (S.D.Cal.1965) (interlocutory divorce decree and property settlement agreement); *Raleigh v. Haskell (In re Haskell)*, 1998 WL 809520 (Bankr. N.D.Ill.) (property settlement incorporated into the divorce decree); *Citibank, N.A. v. Williams (In re Williams)*, 159 B.R. 648, 663 (Bankr.D.R.I. 1993) (property settlement agreement approved by state court); *Harman v. Sorlucco (In re Sorlucco)*, 68 B.R. 748 (Bankr.D.N.H.1986) (property settlement incorporated into the divorce decree); *Blackwell v. Wallace (In re Wallace)*, 66 B.R. 834 (Bankr.E.D.Mo.1986); *Goldstein v.*

However, it is important to focus on what is being transferred in the context of entireties property that is subject to an equitable distribution: it is the debtor's claim to the property. *Cf. Besing,* 981 F.2d at 1492–1493. The measure of the worth of that claim is what the debtor would have been entitled to had the divorce decree been at arm's length for a fair consideration. If the debtor was not entitled to receive the property (for example, because future support obligations require that his wife receive the property pursuant to D.C.Code Ann. 16–910), the claim is worthless and there is no transfer of anything of value for the trustee to pursue.[20]

But a fraudulent conveyance may exist if the debtor agreed to the nondebtor spouse's receiving more than any rational application of the factors would have yielded had the matter been litigated. In *Sorlucco,* 68 B.R. at 755, the court announced the following test:

> It must be shown that the property division was the result of arms-length bargaining in the light of the likely range of distribution that the divorce court might order if the matter went to a contested trial. Settlements reached in the shadow of an imminent bankruptcy filing would raise a clear factual question as to the bona fides of such bargaining.

That is the appropriate test in the court's view.

The court declines to view § 548(a)(2)'s definition of "reasonably equivalent value" as overriding District of Columbia law's list of factors for dividing up entireties property upon a divorce. Instead, District of Columbia law defines the extent, if any, of the debtor's entitlement to the property. The "reasonably equivalent value" of the debtor's treatment under any property settlement must be viewed against that entitlement.

Three cases appear to suggest to the contrary. The court finds them distinguishable or unpersuasive.

First, two cases appear to hold that the "reasonably equivalent value" issue under § 548(a)(2) is different than the state law standards for dividing up marital property. *Haskell,* 1998 WL 809520, at *8 ("factors outlined in Illinois statute . . . used to make a determination of a just distribution . . . are different from those used in reasonably equivalent value determination"); *Wallace,* 66 B.R. at 844–45. The court respectfully disagrees with these holdings, at least in the context of District of Columbia law. *Haskell* and *Wallace* are perhaps distinguishable based on the peculiarities of the state laws at issue. In *Wallace,* 66 B.R. at 843, the court concluded that upon divorce the debtor had a one-half interest as tenant in common, under Missouri law, that was then disposed of by the property distribution decree. In *Haskell,* 1998 WL 809520, at *9, under Illinois law, upon commencement of the dissolution proceedings, "each spouse had an ownership interest in the marital property that vested." The court thus viewed the debtor as having assigned property he owned. *Id.* District of Columbia law is to the contrary, as discussed above.

Additionally, *Gray,* 704 F.2d at 712 n. 2, 713 n. 7, held that in determining "reasonably equivalent value" under § 548(a)(2), no value could be assigned to a release of "inheritance rights" by the nondebtor spouse in exchange for receipt of the debtor's interest in the spouses' residence. The court specifically noted that the debtor had given up "his

---

*Lange (In re Lange),* 35 B.R. 579 (Bankr.E.D.Mo. 1983) (property settlement); *see also Besing v. Hawthorne (In re Besing),* 981 F.2d 1488, 1492–93 (5th Cir.1993) (dismissal of claims by default judgment in prior action was a transfer).

**20.** A transfer of the debtor's property on account of an unmatured nondischargeable support obligation can be a fraudulent conveyance by reason of 11 U.S.C. § 502(b)(5). *Coggin v. Coggin (In re Coggin),* 30 F.3d 1443, 1451–52 (11th Cir.1994). But *Coggin* is distinguishable because the property transferred was already the debtor's property. Here the dissolved entireties estate is the debtor's only to the extent awarded to him under the equitable factors mandated by District of Columbia law. Under those factors, the award of the property to the nondebtor spouse may be based in part on future unmatured nondischargeable support obligations. The debtor has entitlement to the property only pursuant to application of the equitable factors, so there is no transfer of the property on account of such support. *But see Wallace,* 66 B.R. at 844–45.

half-interest" in the residence, thus suggesting that he already owned that interest instead of holding an interest as a tenant by the entirety. *Gray*, 704 F.2d at 710. Moreover, the spouses in *Gray* never divorced. The court of appeals had no occasion to consider whether in a divorce proceeding the divorce court would have authority to take into account "inheritance rights" in dividing up entireties property. Accordingly, *Gray* is irrelevant here.

Despite the more rigorous test this court adopts for proving a transfer avoidable under § 548(a), the court cannot dismiss the complaint with respect to any award of the 13th Street property to Mrs. Hope pursuant to the 1993 Agreement because the trustee has pled that the Agreement was made with actual fraud and is thus avoidable under § 548(a)(1) and, alternatively, that the Agreement was constructively fraudulent as defined by § 548(a)(2). No evidence has been submitted to establish to the contrary.

2. *A Non-collusive Divorce Decree Changing Ownership of Entireties Property for Fair Consideration Is Not a Transfer and No Preference Can Arise from an Award Under the Decree to the Non-debtor Spouse Based on Unpaid Support.*

■ If the divorce decree is not collusive and divides the property in accordance with considerations allowed by state law, it determines the interests of the parties in the property. Thus, for example, in *In re Watson*, 192 B.R. 238, 241 (Bankr.D.Nev.1996), *aff'd, on appeal of unrelated issue, sub nom.*

*Watson v. Proctor*, 214 B.R. 597 (9th Cir. BAP 1997), *aff'd*, 161 F.3d 593 (9th Cir.1998), there was no suggestion that the divorce decree was the result of a collusive effort by the debtor to hinder, delay or defraud creditors. The court correctly ruled that the divorce decree was not a transfer but a division of marital property.

■ Similarly, a property division under a divorce decree cannot be ignored on the basis that the division was based on reimbursement of the nondebtor spouse for payment of joint debts discharged in the other spouse's bankruptcy case. *Paderewski v. Barrett (In re Paderewski)*, 564 F.2d 1353 (9th Cir.1977) (decided under the Bankruptcy Act).[21]

In *Keller v. Keller (In re Keller)*, 185 B.R. 796 (9th Cir. BAP 1995), the court applied *Paderewski* to bar the chapter 7 trustee from recovering a preference under 11 U.S.C. § 547 with respect to debts paid out of community property pursuant to orders in a divorce proceeding. The debts were child and spousal support arrears and attorney's fees owed to the non-debtor spouse's attorneys. These payments were made pursuant to orders that were issued within the 90–day preference period preceding the filing of the debtor's petition under chapter 7 of the Bankruptcy Code. The orders were issued pursuant to an earlier divorce judgment that had assigned each spouse an initial equal share of proceeds, but subject to various adjustments specified in that judgment and as necessary by subsequent orders of the

---

**21.** In *Paderewski*, a divorce decree provided that on the sale of the marital residence, a community property asset, an equal division of the proceeds would be preceded by an application of the proceeds to pay community debts. After the divorce, the wife filed bankruptcy. The residence was sold and the bankruptcy referee entered an order regarding the disposition of the sale proceeds. The bankruptcy referee held that the divorce decree's "provision that the community debts be paid out of the gross proceeds should be disregarded because the bankrupt's liability ... had been discharged." *Paderewski*, 564 F.2d at 1358. The court of appeals reversed on the basis that "the provision for the payment of the community debts was an indivisible part of the division of the community property." *Id*. The court of appeals explained:

California courts often deduct the community debts from the gross value of the community property before dividing the residue. Since such deductions are considered to be part of the division and allocation of the community property, the bankrupt's trustees cannot claim that her community-property interest in the house gave her a one-half interest in the gross proceeds.

*Id*. at 1357 (citations omitted). The court of appeals ruled similarly regarding another provision of the decree which required that prior to an even distribution between the spouses, the proceeds were to be used to reimburse the husband for certain payments of expenses and debts. *Id*. at 1358.

court. *Keller*, 185 B.R. at 796. The court reasoned that "the debtor never possessed a vested right to one half of the net sale proceeds. Consequently, adjustments made prior to distribution were not a transfer of 'an interest of the debtor in property'" under 11 U.S.C. § 547(b). *Id.* at 799. Similar reasoning appears to have been applied in a noncommunity property state in dismissing a § 547 claim. *Sorlucco*, 68 B.R. at 752–53 (until the final property settlement or divorce decree, the spouses' respective interests in marital assets based on a number of factors, including support obligations, are not fixed).

▉ The logic of *Watson, Paderewski*, and *Keller* can be extended to property held as tenants by the entireties under District of Columbia law. On divorce, the debtor ceases to have the prior ownership interest he had in entireties property and his ownership interest in such property is governed by state law (which may take into account such factors as the support obligations owed by the respective spouses). An award based on outstanding support obligations is thus not a transfer of the debtor's rights in the property; rather, it is a determination of his lack of ownership in accordance with state law. To the extent that the support obligation does not justify the award—to the extent that the divorce decree was too one-sided—then the debtor's acquiescence in the award under the decree might be attacked as a fraudulent transfer as discussed above, but it is not a preference.

Although *Besing*, 981 F.2d at 1492–93, holds that any decree dismissing a claim is a transfer, this does not alter the outcome. Where the debtor's claim is dismissed based on support arrears, the dismissal of the claim is a transfer on account of the wife's superior ownership claim (which happens to be superior because of unpaid support arrears). But the transfer is not a transfer of anything of

value: the debtor does not actually own one-half of the real property, but only a claim (which is worthless) based on the equities. The division of the property under D.C. law is an integral first step before the ownership can be determined and avoidance analysis brought to bear. In that first step, D.C. law is free to consider antecedent debts between the spouses without preference law intruding.

There is no evidence that Congress intended such adjustments for unpaid support obligations, in determining the post-marriage division under state law of the entireties property, to be viewed as a transfer of an interest of the debtor in the property subject to the reach of the preference statute.[22] The court will accordingly dismiss the preference count, without prejudice to the trustee's pursuing fraudulent conveyance claims on the basis that the alleged support obligation was insufficient to constitute reasonably equivalent value under 11 U.S.C. § 548(a)(2) (or on the basis that somehow the exchange was intended to hinder, delay or defraud creditors under 11 U.S.C. § 548(a)(1)).

B. *Treatment of the Divorce Judgment as Res Judicata or Collateral Estoppel*

Without citation to any case law, Mrs. Hope contends that the Divorce Judgment must be viewed as res judicata on the issues presented here because the Divorce Judgment concluded the issue of how the property would be divided. Because the term res judicata is sometimes used expansively to cover both claim preclusion and issue preclusion (also known as collateral estoppel), the court will address both claim and issue preclusion.

▉ The court must give a District of Columbia judgment full faith and credit pur-

---

**22.** The issue will be academic in future cases when the adjustment is based on a support obligation. Congress amended 11 U.S.C. § 547(c) in 1994 to insert in place of old § 547(c)(7) (which was renumbered as § 547(c)(8)) a new exemption from preferences for payments of support pursuant to a divorce decree. That exemption applies only when a payment labeled as support is truly support and not, for example, a

property settlement, and thus is broad enough to exempt payments out of the debtor's separate property. But new § 547(c)(7) is no evidence that Congress was of the view that under prior law the reallocation of entireties property based on considerations of forgiveness of inter-spousal support obligations could properly be within the contemplation of the preference statute.

suant to 28 U.S.C. § 1738.[23] *Stanton v. D.C. Court of Appeals,* 127 F.3d 72, 77 (D.C.Cir. 1997); *Washington Gas Light Co. v. Hsu,* 478 F.Supp. 1262 (D.Md.1979); *see also Synanon Church v. United States,* 579 F.Supp. 967 (D.D.C.1984), *aff'd,* 820 F.2d 421 (1987). Under *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), a state court judgment may have preclusive effect under § 1738 in the litigation of a claim exclusively within the subject matter of the federal courts only if under state law principles the judgment would have such preclusive effect. *Marrese,* 470 U.S. at 383, 105 S.Ct. 1327. Here, however, the court's task is somewhat simplified:

> The D.C. law of claim preclusion does not differ significantly from the federal. D.C. courts articulating the doctrine commonly cite federal cases applying federal law. We have said that "we can discern no material differences in the District of Columbia's law of res judicata and the federal common law of res judicata."

*Stanton,* 127 F.3d at 78 n. 4 (citations omitted). If after reviewing state law the court concludes that state law does have preclusive effect, then it is necessary to ask whether the federal law at issue embodies policies evidencing an exception—an express or implied repeal—to § 1738. *Marrese,* 470 U.S. at 381, 386, 105 S.Ct. 1327. To find an implied repeal requires application of a "relatively stringent standard for such findings, namely, that there be an 'irreconcilable conflict' between the two federal statutes at issue." *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 381, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).

#### 1. *Res Judicata (Claim Preclusion) Effect on Debtor*

 The doctrine of res judicata applies to all claims that should have been litigated as part of the divorce proceedings, not just those actually litigated. *See Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). As observed

in *Page v. United States,* 729 F.2d 818, 820 (D.C.Cir.1984) (footnotes omitted):

> The doctrine of res judicata is that "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not." The judgment bars any further claim based on the same "nucleus of facts," for "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."

 The general rule is that court-approved settlements are entitled to the same claim-preclusion effect as litigated judgments. *Hoxworth v. Blinder,* 74 F.3d 205, 208 (10th Cir.1996), *cert. denied,* 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996); 18 Charles Alan Wright et al., *Federal Practice and Procedure,* § 4443 at 385 (1981). The Superior Court, in any event, implicitly blessed the parties' pre-divorce agreement regarding a division of their marital properties. The Superior Court was required to find, even if by stipulation, that there was a "valid ... agreement ... disposing [of] the property of the spouses" as provided by the opening clause of § 16-910 if the Superior Court was to avoid the task of itself distributing the entireties property under § 16-910(b). That suffices to make its decree an adjudication that the 1993 Agreement would control the disposition of the 13th Street property.

 The trustee argues that the Divorce Judgment expressly declined to incorporate or merge in the Divorce Judgment the parties' prior settlements. However, the Superior Court expressly found that the 1993 Agreement "settles and resolves all issues between the parties arising out of their marriage, including custody, support and property rights. There are no issues to be resolved

---

**23.** Known as the Full Faith and Credit Act, 28 U.S.C. § 1738 mandates that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

by this Court." The failure to incorporate or merge the 1993 Agreement into the Divorce Judgment does not negate the fact that the Superior Court addressed the issue of property division and concluded, albeit apparently by stipulation, that there was a settlement agreement (the 1993 Agreement which incorporated the 1987 Agreement) which divided the parties' entireties property, leaving no issue for the Superior Court to resolve.[24]

In any event, even without approval of the 1993 Agreement, not incorporating or merging the 1993 Agreement into the Divorce Judgment could not destroy the res judicata effect of the Superior Court's order because § 16–910 placed the property claims into issue, even if they were not litigated.

2. *The Divorce Judgment Has No Claim–Preclusion Effect as to the Trustee on the Fraudulent Conveyance Claims*

A property settlement approved by a divorce decree can be avoided as fraudulent under 11 U.S.C. §§ 548(a)(1) or (2) despite a plea of res judicata.

■■■■ Section 548(a)(1) requires a showing that the transfer was made with an actual intent to hinder, delay or defraud a present or future creditor. A bankruptcy trustee is not bound by a judgment to which he was not a party on the basis of privity with the debtor's interests if the judgment was a collusive effort to hinder, delay or defraud creditors. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1267–71 (11th Cir.1998); *Haskell*, 1998 WL 809520, at *5–7; *Clausen*, 44 B.R. at 43–45 (discharge denied under 11 U.S.C. § 727(a)(2) because debtor's default leading to divorce decree awarding homestead to

wife for inadequate consideration amounted to a fraudulent transfer).

■■■■ In contrast, § 548(a)(2) requires no showing of an actual intent to hinder, delay or defraud creditors. Actions under § 548(a)(2), designed to protect the debtor's creditors, depend on a showing of receipt of less than a reasonably equivalent value in exchange for the transfer coupled with a further showing that at least one of three circumstances enumerated in § 548(a)(2)(B)—circumstances demonstrating a hindering effect on creditors—was in existence when the transfer was made (for example, under § 548(a)(2)(B)(i), that the debtor was insolvent when the transfer was made). When those circumstances exist, it stands to reason that despite the absence of any intent to hinder, delay or defraud creditors, claim preclusion ought not preclude the divorce decree from being treated as a "transfer" for purposes of § 548(a)(2). For example, relinquishment of a debtor's right to claim part of entireties property in exchange for nothing is not really a division of marital property under state law but rather an abandonment by the debtor of his right to claim part of the property pursuant to such state law. That a divorce decree, to which creditors were not a party, blesses that relinquishment ought not preclude a § 548(a)(2) avoidance of the transfer thereby effected. *Gray*, 704 F.2d at 711–12 (court must inquire regarding extent to which there was an obligation of support owed that makes exchange reasonably equivalent value).

One way of explaining this is that there is no privity between the trustee in suing under § 548(a)(2) and the debtor as a party in the prior divorce proceeding which was resolved consensually. *See Lange*, 35 B.R. at 585–86 ("The principles of res judicata or collateral estoppel are not even suggested by [prior] cases as a bar to such an attack, reasonably

**24.** Expressly not merging or incorporating the property settlement into the Divorce Judgment may have been founded on the following considerations. If the agreement had been merged into the Divorce Judgment, it would have been modifiable by the Superior Court based on changed circumstances. *Hamel v. Hamel*, 539 A.2d 195, 199 (D.C.1988). The practice of not incorporating and merging a property settlement into the divorce decree means that the agreement cannot

be modified by the Superior Court. *Norris v. Norris*, 473 A.2d 380, 381 (D.C.1984); *Lanahan*, 317 A.2d at 525 (noting a different rule as to support agreements). Additionally, the failure to incorporate the 1993 Agreement may have meant that its terms could not be enforced by way of contempt sanctions, but instead would be enforceable by way of a suit for specific performance.

so since a divorcing couple's creditors are not typically parties to the dissolution proceeding." (citation omitted)); *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854 (6th Cir. BAP 1997)[25]; *Wallace*, 66 B.R. at 836. Whether there would be any privity were the prior decree not consensual need not be addressed here.[26]

But another even more satisfactory explanation exists for holding that the Divorce Judgment, under the claim preclusion doctrine, does not bar the trustee's fraudulent conveyance claims under § 548(a)(2) (or § 548(a)(1)). When the second action is based on a different cause of action, the judgment in the earlier suit has no preclusive effect. *FTC v. Motion Picture Adver. Serv. Co.*, 344 U.S. 392, 73 S.Ct. 361, 97 L.Ed. 426 (1953). Here the trustee's claims under § 548(a) could not have been pursued by the debtor in the divorce proceeding: § 548(a) grants the trustee a federal cause of action that does not exist outside of bankruptcy and prior to its intervention. Although District of Columbia law does provide a cause of action for fraudulent conveyance, § 548(a) exists completely independently of such state law causes of action. The divorce proceeding

could not be res judicata (claim-preclusive) with respect to a cause of action that did not even come into existence until the bankruptcy case was commenced.[27]

### 3. Claim Preclusion as to Preference Claims

■ Two cases already discussed have upheld the res judicata effect of a final divorce order on the power of a bankruptcy court to reach community property awarded to a non-debtor spouse. *Paderewski*, 564 F.2d at 1356–57 (decided under the Bankruptcy Act); *Keller*, 185 B.R. at 800 ("the final judgment is res judicata as to the division of property and is binding on the bankruptcy trustee"). Although *Keller* referred to the prior state court judgment as res judicata on a § 547 preference claim, this court is of the view that claim preclusion does not apply to a § 547 preference claim that did not exist before the filing of the bankruptcy case. Instead, as discussed above, the prior state court judicial decree is simply a determination of ownership and by definition is not a "transfer" of real property of the debtor.

*Fordu*, 209 B.R. at 862–63 (citations omitted).

**25.** In *Fordu*, the trustee invoked Ohio law to attempt to avoid as fraudulent or as preferences transfers of the debtor's interest in the proceeds of a winning lottery ticket and a marital residence. The appellate panel held that the trustee was not barred by preclusion principles from pursuing the claims:

A constitutive element of applying preclusive effect to a prior judgment is an identity of the parties involved in the prior proceeding. The Trustee was not an actual party to the dissolution proceeding; however, a party will be bound by the prior judgment if that party stands in privity with one who was a party to the prior proceeding....

... It has long been recognized that for privity to exist, the interest between a debtor and a trustee must be so similar that "[t]he [debtor] was [the trustee's] 'virtual representative' in the prior action." *Shuman v. McDonald (In re Shuman)*, 78 B.R. 254, 256 (9th Cir. BAP 1987). Unless the interest is virtually identical, "[t]he defense of a cause of action by a debtor pre-bankruptcy does not necessarily represent the rights of a bankruptcy trustee." *Id.* Additionally, courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances.

**26.** *See Richards v. Jefferson County*, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *Tice v. American Airlines, Inc.*, 162 F.3d 966, 971–73 (7th Cir.1998) (adopting a functional test focusing on, among other things, whether "a formal kind of successor interest is involved (e.g., subsequent landowner, successor corporation)").

**27.** *See Dudley v. Dickie*, 281 F.2d 360, 363 (9th Cir.1960) (because preference issue could not have been raised in state court action, the state court decree had no res judicata effect); *Berrara v. City Real Estate Co.*, 64 F.2d 498 (2d Cir.1933) (decree in state court foreclosure proceeding does not preclude trustee from suing to set aside mortgage as fraudulent transfer); *Hoyt v. Hoyt (In re Hoyt)*, 97 B.R. 730, 731–32 (Bankr.D.Conn. 1989) (dissolution decree did not bar § 548(a)(2) claim). *Cf. DuVoisin v. Anderson (In re Southern Indus. Banking Corp.)*, 66 B.R. 349, 362 (Bankr. E.D.Tenn.1986) ("Exercising an avoidance power as a representative of the estate, the trustee does not stand in the shoes of the debtor." (footnote omitted)); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Bozzuto*, 227 B.R. 466, 473 (E.D.Va.1998) (creditor was not barred by reason of trustee's settlement in bankruptcy case from pursuing cause of action that trustee could not have pursued).

### C. Lack of Issue Preclusive (Collateral Estoppel) Effect of Decree

Had the Hopes fully and fairly litigated their divorce, collateral estoppel might well apply.[28] The property settlement here, however, was consensual and was expressly not incorporated into the Divorce Judgment. It ought not give rise to collateral estoppel on the issue of whether there was reasonably equivalent value.

 The doctrine of collateral estoppel applies only to issues actually litigated and determined in prior litigation.[29] To this general rule there is an exception allowing a consent decree to have preclusive effect if it contains "far-reaching preclusive language" establishing the parties' clear intention that the consent decree "adjudicate once and for all the issues raised in [the] action." *Southern Pac. Communications Co. v. American Tel. & Tel. Co.*, 740 F.2d 1011, 1021 (D.C.Cir. 1984) (quoting *Yachts America, Inc. v. United States*, 230 Ct.Cl. 26, 673 F.2d 356, 362 (1982), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982)). There is nothing in the 1993 Agreement to suggest that it was based only on factors relevant to an inquiry into "reasonably equivalent value." Moreover, the Divorce Judgment did not even incorporate the 1993 Agreement, with the result that it can hardly constitute a clear intention that the Agreement was to have future preclusive effect on the litigation of the issue of "reasonably equivalent value."

 Moreover, a divorce decree can be given collateral estoppel effect only against a party to the prior litigation or one in privity with that party. *Moucka v. Windham*, 483 F.2d 914, 916 (1973) (citing *Britt*, 334 F.2d at 901). The consent decree represented an agreement between two spouses without any necessary incentive to watch out for the interests of creditors who were not parties; there was no litigation to demonstrate that the decree was the result of the merits. In those circumstances, there ought not be any privity between the debtor and the trustee. *Fordu*, 209 B.R. at 863[30]; *Lange*, 35 B.R. at 585–86; *Haskell*, 1998 WL 809520, at *5–6. *But see Falk v. Hecker (In re Falk)*, 98 B.R. 472, 475 (D.Minn.1989) (debtor in possession, exercising trustee § 548(a)(2) powers, was collaterally estopped by court-approved property settlement where state law gave consent decrees collateral estoppel effect absent fraud; privity existed because debtor had negotiated property settlement diligently and had well represented his creditors' interests). If the transfer does not represent "reasonably equivalent

---

**28.** *Besing*, 981 F.2d at 1494–96 (dismissal, based on default in discovery, of debtor's claims both effected transfer of claims *and* fixed value of dismissed claims as worthless: debtor received "reasonably equivalent value" as defined in § 548(a)(2) for transfer of claims); *In re One Bancorp Secs. Litigation*, 151 B.R. 1, 3 (D.Me. 1993) (court's determination that debtor's class action settlement was fair, reasonable and just precluded trustee on issue of "reasonably equivalent value"); *Hoyt*, 97 B.R. at 733–34 (collateral estoppel applied to divorce decree to bar § 548(a)(2) claim when the issue of reasonably equivalent value was actually litigated). *But see Wallace*, 66 B.R. at 836.

**29.** *I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 949 n. 7 (D.C.Cir.1983) ("decree appears to be nothing more than a *pro forma* acceptance by the court of an agreement by the parties to settle their controversy") (citing *United States v. International Bldg. Co.*, 345 U.S. 502, 505–06, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) ("we are unable to tell whether the [consent decree] was based on the merits or on some collateral consideration")); *Otherson v. Department of Justice, I.N.S.*, 711 F.2d 267, 274

(D.C.Cir.1983) ("Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion.").

**30.** In *Fordu*, the appellate panel addressed the effect of the dissolution decree's recitation that the parties' separation agreement was fair, just and equitable, specifically, whether this had preclusive effect on the issue of whether the transfers were for reasonably equivalent value (apparently an element of Ohio fraudulent conveyance law). The court held that there was no issue preclusion as a result of the decree:

> [T]he Ohio court was required to enter the terms of [the spouses'] Separation Agreement and was without authority to review and determine whether it was fair, just and equitable and whether the transfers were made in exchange for reasonably equivalent value. If the transfers were in fact fraudulent as to the Debtor's creditors, the gratuitous addition of the words—fair, just and equitable—in the Dissolution Decree "could not erase the fraud."

*Fordu*, 209 B.R. at 863 (citation omitted).

value"—that is, does not accurately reflect an outcome within the range of what would have transpired had the matter actually been litigated—it follows that the agreement ought not have any greater preclusive effect on creditors than an agreement not approved by a consent decree.

Finally, even assuming *Falk* was correctly decided, it is distinguishable because here the trustee has pled an actual intent to hinder, defraud or delay creditors. As in the case of claim preclusion, the alleged fraud permits both the § 548(a)(1) claim and the § 548(a)(2) constructive fraud claim to survive the invocation of collateral estoppel as a bar to litigation of the "reasonably equivalent value" issue. *See XYZ Options, Inc.*, 154 F.3d at 1269–71; *Haskell*, 1998 WL 809520, at \*5–7; *Fordu*, 209 B.R. at 863.

## III. THE TRUSTEE'S AVOIDANCE POWERS UNDER § 544(a)

While the trustee specifically invokes 11 U.S.C. §§ 547(b) and 548(a) in his complaint, he also implicitly invokes § 544 because he makes reference to the D.C. recordation statute. The trustee contends that Mrs. Hope's unrecorded interest is ineffective against him by reason of § 544(a).

11 U.S.C. § 544(a)(3) provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

The trustee assumes, without any citation to authority, that Mr. Hope was vested with a one-half interest in the 13th Street property by way of the divorce. He urges that Mr. and Mrs. Hope's division of the property differently without a deed of transfer would be ineffective against a bona fide purchaser.

### A. *Mr. Hope Owned Nothing to Convey on the Petition Date*

 Under D.C.Code Ann. § 16–910, upon a divorce, entireties property's ownership is determined by the divorced spouses' pre-divorce agreement (or by the court in the absence of such an agreement). Thus, divorce effects a transformation of ownership without the necessity of an actual deed.

 As of the commencement of Mr. Hope's bankruptcy case, which came after the divorce, a purchaser could buy from Mr. Hope only that which § 16–910 had vested in him. Here such a purchaser could obtain no equitable interest in the 13th Street property because the Divorce Judgment blessed the parties' 1987 and 1993 Agreements which gave the equitable interest to Mrs. Hope. Mr. Hope simply had no interest on the petition date to convey to a purchaser.

Because the property was entireties property, this case is distinguishable from such cases as *Edmondson v. Frasier (In re Frasier)*, 47 B.R. 864, 865–66 (Bankr.M.D.Tenn. 1985) (divorce decree's award of tenants-in-common asset had to be registered in order to defeat bona fide purchaser). Accordingly, the trustee (standing in the shoes of a hypothetical purchaser) cannot avoid Mrs. Hope's interest in the property pursuant to § 544(a). *See In re Perry*, 131 B.R. 763, 767–69 (Bankr.D.Mass.1991).

### B. *In any Event, a Bona Fide Purchaser Would Have Had Notice of Mrs. Hope's Interest in the Property*

 Even disregarding Mr. Hope's lack of anything to convey on the petition date, any purchaser from Mr. Hope would have been on inquiry notice regarding Mrs. Hope's interest. *Sovran Bank v. United States (In re Aumiller)*, 168 B.R. 811 (Bankr. D.D.C.1994). Under District of Columbia law, when an equitable interest in property is not recorded, it is not effective against a bona fide purchaser or judgment creditor who acquired an interest in the property without notice of the equitable lien. *Aumiller*, 168 B.R. at 818. What constitutes notice

varies among states and the trustee's status under § 544(a) is governed by state substantive law governing that notice. *Id.* Pursuant to District of Columbia law, a bona fide purchaser or judgment creditor is subject to actual, constructive or inquiry notice. *Id.* (citations omitted).

■■■■ "Actual notice is not relevant in the context of § 544(a) as the trustee assumes the role of a bona fide purchaser or judgment creditor without actual knowledge." *Id.* (citations omitted). However, a trustee may be held to constructive or inquiry notice. *McCannon v. Marston,* 679 F.2d 13, 16–17 (3d Cir.1982). Constructive notice, which generally means record notice,[31] does not exist in this case because the equitable lien was not recorded. However, the Divorce Judgment along with the separation agreements are sufficient to hold subsequent purchasers or creditors to inquiry notice.

In *Clay Properties, Inc. v. The Washington Post Co.,* 604 A.2d 890, 895 (D.C.1992), the court defined inquiry notice as when a purchaser is "aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances. The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed."

A bona fide purchaser who wished to buy only Mr. Hope's interest in the property (after the divorce) would have, at a minimum, performed a title search. A search of the real property records would have revealed that Mrs. Hope was a co-owner of the property. The buyer would have learned that Mr. and Mrs. Hope were divorced and that the property was, thus, no longer held as tenants by the entireties. However, at that point, the buyer could not have known how the property was held or by whom. This should have generated enough uncertainty about the state of title that a person of ordinary prudence would inquire further.

It would be unreasonable and imprudent for a potential purchaser to have assumed either that (a) no agreement existed between the former spouses regarding the division of the property or that (b) the property must have been distributed equally among the former spouses as tenants in common. This follows from D.C.Code Ann. § 16–910, which concerns distribution of property upon a divorce.

Only by examining District of Columbia law regarding severed tenancies by the entirety would a prudent purchaser have been able to determine what the debtor owned. Upon examining District of Columbia law, it would have been incumbent upon the purchaser to obtain a copy of the Divorce Judgment in order to ascertain what the property distribution between Mr. and Mrs. Hope had been.

A reading of the Judgment would have revealed that as a result of the parties' 1993 Agreement (the language of which was quoted in the Divorce Judgment), all of the proceeds of a sale of the 13th Street property belonged to Mrs. Hope. Judgment of Absolute Divorce at 5. Moreover, a reading of the 1993 Agreement would have revealed the existence of the 1987 Agreement which initially granted all of the equity in the property to Mrs. Hope. Accordingly, a hypothetical bona fide purchaser would have been on inquiry notice. *See Bennett v. Bennett (In re Bennett),* 175 B.R. 181, 187 (Bankr.E.D.Pa. 1994).

■■■■ The court is further convinced that this is the correct result because of the doctrine of lis pendens as it is applied in the District of Columbia. Under the common-law doctrine of lis pendens, a purchaser who acquires an interest in property that is the subject of pending litigation is held to have notice of the suit and, thus, takes the property subject to the result of the litigation. *Chrysler Corp. v. Fedders Corp.,* 670 F.2d 1316 (3d Cir.1982). While most states have enacted legislation that ameliorates the harshness of lis pendens, the District of Columbia has not. Thus, in the District, neither actual nor record notice to the purchaser is required. Merely filing a lawsuit is constructive notice to all. *Cf. Jarvis v. Technical Land, Inc. (In re Technical Land, Inc.),* 172 B.R. 429 (Bankr.D.D.C.1994). The

---

**31.** 6A R. Powell & P. Rohan, *The Law of Real* *Property* ¶ 905[1], at 82–48 (1989).

court holds that purchasers are on inquiry notice of the terms of a property distribution referred to by a divorce decree. *See Bennett*, 175 B.R. at 186; *Ebel v. Ebel (In re Ebel)*, 144 B.R. 510, 515–16 (D.Colo.1992).

Because a purchaser would have been on inquiry notice of Mrs. Hope's equitable interest in the property, under D.C. law that purchaser's rights would have been inferior to those of Mrs. Hope. Thus, the trustee's claim under § 544(a)(3) must be rejected.

## IV. THE TRUSTEE'S AVOIDANCE POWERS UNDER § 548(a) CANNOT REACH ANY TRANSFER UNDER THE 1987 AGREEMENT, BUT CAN REACH ANY FRAUDULENT TRANSFER UNDER THE 1993 AGREEMENT, BUT WHAT WAS TRANSFERRED UNDER THE 1993 AGREEMENT IS UNCLEAR

In his complaint, the trustee alleges that Mr. Hope's transfers of property to Mrs. Hope were fraudulent under 11 U.S.C. §§ 548(a)(1) and (2). For those provisions to apply there must be a "transfer of an interest of the debtor in property ... within one year before the date of the filing of the petition."

The effective date of when the transfer of the equity in the 13th Street property to Mrs. Hope was "made" is governed by 11 U.S.C. § 548(d)(1). Under § 548(d)(1), "a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor ... cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee."

When the property was held in tenancy by the entireties, the debtor had an interest in the property as a tenant by the entirety. The Bankruptcy Code recognizes that interest as a property interest of the debtor. *Wickstrom*, 113 B.R. at 347. Accordingly, the entireties character of the property does not stand in the way of a transfer to Mrs. Hope having occurred under the 1987 and 1993 Agreements. Plainly the 1993 Agreement was made less than one year before the

commencement of the bankruptcy case, but as discussed in Parts A though C below, any transfer under the 1987 Agreement is time-barred. Whether the 1993 Agreement transferred anything not transferred by the 1987 Agreement is discussed in Part D below.

### A. *The Existence of a Transfer Despite the Lack of a Deed*

The trustee contends that there was no transfer in 1987 (or 1993) because of D.C.Code Ann. § 45–306(b) (1996 Replct. Vol.), which requires that any estate for a longer term than one year in real property can be created or take effect only by deed signed and sealed by the grantor. Here both Agreements were signed before a notary public and the 1993 Agreement was expressly under seal. This seemingly presents two issues: whether the 1987 Agreement was under seal and whether the 1987 and 1993 Agreements were "deeds."

The court readily bypasses those issues. First, even disregarding the legal effect of the divorce on title to the property, there would have been an effective transfer. If the notarization of the 1987 Agreement did not suffice to make it a "sealed" document, the acknowledgment of the 1987 Agreement in the 1993 Agreement and in the Divorce Judgment takes the agreement outside of the statute of frauds that § 45–306 embodies. *Tauber v. District of Columbia*, 511 A.2d 23 (D.C.1986). If the Agreements do not constitute deeds, this is of no consequence because § 45–306(b) deals with legal title, not equitable title. *SMS Assocs. v. Clay*, 868 F.Supp. 337, 340–41 (D.D.C.1994) (upholding doctrine of equitable conversion in favor of purchaser with executed contract of purchase but no deed). As shown below, Mrs. Hope had an equitable interest in the property, even if not a legal interest.

### B. *Mrs. Hope Had an Equitable Lien on the Property*

Under equitable lien theory, a written promise may give rise to a valid and enforceable equitable lien. *Aumiller*, 168 B.R. at 816–17.[32] In *Aumiller*, the debtor

---

32. In *Aumiller*, this court cited *Woarms v. Ham-* *mond* for the principle that "'equity will treat

agreed in a guaranty agreement to execute, upon the request of the lender, such further documents as the lender required to cause a lien and encumbrance in favor of the lender to be recorded against the interest of Aumiller in certain property. The lender requested that Aumiller execute a deed of trust on the property, but he failed to do so. This court held that all the elements necessary for the creation of an equitable lien were present. *Id.* at 817. That lien would be enforced by a court of equity.

■ Similarly, the elements necessary for the creation of an equitable lien are present in this case. In the 1987 Agreement, Mr. Hope agreed that, in return for transferring 1638 R Street to Mr. Hope, the equity in the 13th Street property shall become the sole property of Mrs. Hope. The Agreement stated that "[t]he wife has the right to force a sale of the property if she and the husband cannot agree to the future of the property." However, Mrs. Hope was not required to sell the property in order to be entitled to her equity interest.

■ Because the promise to give the equity to Mrs. Hope relates to a particular piece of property and demonstrates the parties' intent that the equity in the property would become that of Mrs. Hope, the elements of an equitable lien are satisfied and the lien should be enforced by a court of equity. The 1987 Agreement was a contract between the parties that must be construed as it is written. By relinquishing his equity in the property to Mrs. Hope, Mr. Hope necessarily relinquished any rights to the proceeds of a sale. *See Owen v. Owen,* 427 A.2d 933, 938 (D.C.1981). Although the property was never sold and, thus, the equity never disbursed to Mrs. Hope, this court regards as done that which Mr. Hope agreed to do. The relinquishment of Mr. Hope's rights was confirmed anew by the 1993 Agreement. This court concludes that Mrs. Hope obtained an equitable lien against the

equity in the property by the 1987 and 1993 Agreements which divested Mr. Hope of his interest in the equity in the property.

Alternatively, the Agreements between the Hopes arguably could be viewed as agreements to convey the equity interest instead of as agreements that the property would be charged with paying Mrs. Hope the amount of the equity. In that event, Mrs. Hope would hold the equitable interest in the property's equity, not merely a lien. *SMS Assocs.,* 868 F.Supp. at 340–41 (upholding doctrine of equitable conversion in favor of purchaser with executed contract of purchase but no deed). In either event, whether the arrangement is treated under the equitable lien theory or the doctrine of equitable conversion, the outcome is the same: as demonstrated below, a bona fide purchaser would have learned of Mrs. Hope's equitable interest in the property. The court will treat her interest as an equitable lien interest in order to illustrate the fate of a bona fide purchaser.

C. *The Trustee's Assumption That the Debtor Owned an Interest in the 13th Street Property that a Purchaser Could Purchase More Than One Year Before the Commencement of the Case is Rendered Erroneous by D.C.Code Ann. § 16–910*

The respective interests of Mr. and Mrs. Hope as divorced spouses in the 13th Street property were defined by District of Columbia law, specifically D.C.Code Ann. § 16–910. Under that law, upon dissolution of the Hopes' marriage, there would have been no automatic rule vesting Mr. Hope with an interest in the 13th Street property.

Before the divorce, a purchaser could not have obtained anything from Mr. Hope because Mr. Hope could not convey an interest in entireties property. But what if the debtor conveyed his future potential interest in

---

that as done which by agreement is to be done.' " 5 App.D.C. 338, 347–48 (1895). The *Woarms* court quoted Pomeroy's work on Equity and Jurisprudence which states:

[E]very express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular

property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property. . . .

*Woarms,* 5 App.D.C. at 346–47.

the property? Upon the divorce, a pre-divorce purchaser of Mr. Hope's potential interest in the property would still not have acquired an interest in the property. At best, her deed to real property not owned by the seller would have become effective only to the extent that Mr. Hope became the property's owner.

Here the purchaser would not acquire an interest in the property because the Hopes' Divorce Judgment gave the property to Mrs. Hope. Although fraudulent conveyance statutes protect *creditors* against a debtor's too readily allowing his spouse to receive the entireties property, the statute does not protect a *purchaser.* The purchaser would be at the whims of the divorcing couple as to which spouse received the ownership after divorce. She would get only what the deed granted her: an interest in nothing because the debtor never became the owner.

But what if the purchaser attempted not to buy the real property itself, but instead Mr. Hope's right under D.C.Code Ann. § 16–910 to argue for a distribution of the entireties property to himself? Section 548(a) would not apply because such a sale would be ineffective. In the language of § 548(d)(1), it would not be a transfer "from the debtor against whom applicable law permits such transfer to be perfected."

This is because the only appropriate parties to a divorce proceeding's division of entireties property are the two spouses. A purchaser could not successfully intervene on the basis that he had purchased Mr. Hope's rights under D.C.Code Ann. § 16–910. The statute allows the spouses to continue to hold the property as tenants by the entireties, an option which if elected would frustrate the purchaser's attempt to acquire an interest in the property. It would be contrary to the policies of § 16–910 for a purchaser to have a say in a § 16–910 division of entireties property: entireties property that was immune from the reach of such purchasers during marriage, with the husband free to deed his interest in the property to his wife, ought not lose that character (vis a vis an attempted

purchaser) at the point of dissolution of the marriage.

*Before* the divorce in 1993, because the property was held in tenancy by the entireties, a purchaser could not have bought the debtor's interest in the 13th Street property without Mrs. Hope being approached to join in the sale (with the result that the purchaser would have been informed of her interest— unless she chose to relinquish it). Thus, prior to the divorce, Mrs. Hope would have had an interest superior to any purchaser.

■ Once a transfer is perfected, it must remain continuously perfected until the date of the commencement of the bankruptcy case. 5 *Collier on Bankruptcy* § 547.05[1][c] (Lawrence P. King et al. eds., 15th ed. rev. 1998). However, perfection may be by different means at different points in time. *Id.*

■ *After* Mr. and Mrs. Hope were divorced, the property was no longer held in tenancy by the entireties and, thus, any earlier transfer to Mrs. Hope of an interest in the property could conceivably have become unperfected. However, a purchaser could never have purchased anything from Mr. Hope. As discussed above with respect to 11 U.S.C. § 544(a)(3), after the divorce, Mr. Hope owned no equitable interest that he could convey because D.C.Code Ann. § 16–910 allocated the equitable interest to Mrs. Hope as provided by the 1987 and 1993 Agreements. In any event, as also discussed with respect to § 544(a)(3), the Divorce Judgment was sufficient to put a purchaser on constructive notice of the property transfer, such that a bona fide purchaser would still not have been able to acquire superior rights after the divorce.

As a result, the court finds that the 1987 transfer was made years before the filing of the petition in 1993 and thus is not avoidable under 11 U.S.C. § 548(a).[33]

### D. *Whatever Was Transferred By the 1993 Agreement Can Be Attacked as a Fraudulent Conveyance*

In contrast to the 1987 Agreement, any transfer under the 1993 Agreement plainly

---

**33.** Preference claims, as to transfers under the 1987 Agreement, are already precluded by the Divorce Judgment's determination of ownership, but would also be similarly time-barred as in the case of § 548(a) claims. *See* 11 U.S.C. §§ 547(e)(1)(A), (e)(2), and (e)(3) which apply a hypothetical bona fide purchaser test similar to 11 U.S.C. § 548(d)(1).

**428**

occurred within one year before the filing of the petition. The 1993 Agreement presents preliminary issues of whether there was ever any transfer under that Agreement (after the 1987 Agreement had already made a transfer).

### 1. Whether the 1993 Agreement Rescinded the 1987 Agreement

■■■■ Contrary to the trustee's assertion, the court does not believe that there was a rescission of the 1987 agreement because there was no unqualified refusal to perform the contractual obligations. *See Clark v. Clark,* 535 A.2d 872, 880 (D.C.1987). That Mrs. Hope did not sell the property in order to obtain the proceeds of a sale is not indicative of an unperformed contract because the 1987 Agreement did not require her to. Titles to two properties were transferred and the parties likely believed that there was no further performance required as to the 13th Street property.

The 1993 Agreement was not intended to supersede the 1987 Agreement. The 1993 Agreement was meant "to formalize" the parties' arrangements with regard to separation and property rights and it specifically stated that the 1987 Agreement is "incorporated herein" and "attached hereto." 1993 Agreement at 1.[34]

### 2. Whether There Was a Transfer of Equity in 1993

The court notes that even if the 1987 Agreement were still effective, this does not necessarily mean there was no transfer in 1993. If additional equity had accrued between 1987 and 1993, and if the 1987 Agreement were silent regarding future accrued equity, the transfer of this additional equity might have occurred in 1993. However, the court is unable to determine whether there was a transfer of any part of the equity in the real property in 1993. To accurately determine whether there was a transfer in 1993, the court needs to determine what the parties meant by "[t]he equity in the property" as stated in the 1987 Agreement. The language in the 1987 Agreement is ambiguous, as it could be interpreted two different ways. "The equity" could consist only of the amount of equity in the property in 1987, or it could also include equity that accrued after 1987.

The court does not know and cannot decipher from the sometimes conflicting pleadings [35] and evidence what the parties intended when they entered into the 1987 Agreement. Neither Mr. nor Mrs. Hope testified at the hearing or submitted affidavits. The court can only speculate as to why Mrs. Hope relinquished her claim for child support arrearages. The facts are susceptible of two different interpretations.

■■■■ Courts in the District of Columbia have held that if parties disagree regarding the meaning of their separation agreement,[36] then the court must interpret it according to principles of contract law and the court's statutory responsibilities. *See Owen,* 427 A.2d at 937–38; *Rice v. Rice,* 415 A.2d 1378, 1380–82 (D.C.1980). The court

---

**34.** The trustee has not pointed to any intervening events that gave Mr. Hope a right to disregard the 1987 Agreement—for example, if he had a lien against the property for improvements made to the property that offset Mrs. Hope's rights under the 1987 Agreement. If he did, then that might be a way of treating the 1993 Agreement as transferring his entire equity interest to Mrs. Hope anew.

**35.** The defendant asserts in her Motion to Dismiss that the "[d]ebtor James Hope had relinquished *any* claim to the equity in the property on February 25, 1987." Motion to Dismiss ("MTD") at 3, para. 10. However, she later states that "the transfer of the *additional equity*

in the property ... was a bona fide payment of a debt" (MTD at 9 (emphasis added)) and that "[t]he accrued and future equity in the Property was assigned to Defendant in satisfaction of [the] child support obligation" (MTD at 10).

**36.** Although the trustee filed this adversary proceeding contesting the effects of the 1987 and 1993 Agreements on behalf of the debtor's estate, the trustee was not a party to either separation agreement. The possibility exists that Mr. and Mrs. Hope may even agree about the meaning of the 1987 Agreement. However, the court cannot determine this without testimony or affidavits.

**429**

must view the provisions of the agreement consistently with the parties' intent at the time they entered the contract. *Lewis v. Lewis,* 300 A.2d 720, 722 (D.C.1973). If the written language of the separation agreement is "susceptible of a clear and definite understanding," parol evidence should not be admitted. *Rice,* 415 A.2d at 1382 (quoting *Minmar Builders, Inc. v. Beltway Excavators, Inc.,* 246 A.2d 784, 786 (D.C.1968)). However, parol evidence is admissible to explain ambiguous contract terms. *Minmar,* 246 A.2d at 786.

The court may therefore decide with parol evidence what the parties meant by the ambiguous term "the equity." On the one hand, in the defendant's favor, it could be argued that "the equity" generally includes present as well as all future equity and that, thus, Mrs. Hope was already entitled to all the equity in the property, based upon the 1987 Agreement. While the 1993 Agreement purported to give Mrs. Hope the net proceeds of a sale of the property in exchange for forgiving child support arrearages, she was not, in fact, receiving anything that she did not already possess. Mrs. Hope simply generously agreed to forgive the child support debt in 1993 without any consideration. Thus, there may not have been any transfer of property of the debtor in 1993.

On the other hand, because of the parties' subsequent actions (Mrs. Hope's forgiving of the child support arrearages for no apparent additional consideration), because of the language contained in the 1993 Agreement,[37] and because of the statements that Mrs. Hope has made in this proceeding, the conclusion may be reached that the parties intended "the equity" to include only that which existed in 1987. The trustee can argue that it is unlikely that Mrs. Hope would forgive $16,500 in child support arrearages without receiving anything in return.

If the equity that had accumulated between 1987 and 1993 were not transferred to Mrs. Hope by way of the 1987 Agreement, the debtor may have had an interest in the amount by which the equity in the property

had appreciated since 1987. If so, by agreeing to give Mrs. Hope all of the proceeds of a sale of the 13th Street property, the debtor was in fact transferring his remaining interest in the property to Mrs. Hope.

If the court finds at trial that there was a transfer in 1993, the trustee could attempt to proceed under either § 548(a)(1) or § 548(a)(2). Unlike the 1987 Agreement, the 1993 Agreement was made within one year of the filing of the bankruptcy petition and, thus, could be susceptible to avoidance by a trustee.

### CONCLUSION

For the foregoing reasons, the trustee's Motion for Partial Summary Judgment shall be denied and the plaintiff's Motion to Dismiss shall be granted in part.

---

37. Specifically, "[i]n consideration for the Wife receiving the net proceeds of sale of the jointly-titled property located at 1511 13th Street, N.W., Washington, D.C., ... the Wife agrees to forgive these [child support] arrearages." 1993 Agreement at 8, para. 13.