In re Lizabeth H. SMITH, Debtor.

John H. Ring III, as Chapter 7 Trustee of the Estate of Lizabeth H. Smith, Plaintiff,

v.

Robert B. Moriarty, Defendant.

Bankruptcy No. 03–13334 K.
Adversary No. 04–1120 K.

United States Bankruptcy Court,
W.D. New York.

Feb. 9, 2005.

John H. Ring III, Cheektowaga, NY, Trustee.

Robert B. Moriarty, Moriarty & Dee, Buffalo, NY, for Defendant.

MICHAEL J. KAPLAN, Bankruptcy Judge.

Statutes generally do not require that general unsecured creditors of natural persons be notified of a borrower's trials and tribulations in life, even though those trials and tribulations may have tremendous impact on the individual borrower's assets and her use of secured and unsecured credit. For example, unsecured creditors

are not required to be notified of the borrower's loss of job, illness, divorce, loss of real estate at foreclosure, car repossession, conviction for crime, victimization in a crime, or the need to provide assistance to, or to bury, a loved-one.

A few of these unhappy events are not entirely involuntary. Clearly a "separation agreement" manifests one of those instances. So too an uncontested divorce. And even in a contested divorce, the matrimonial court judge is not always going to consider the interests of all of the general unsecured creditors of one or the other spouse. The judge certainly will look at "marital debts," but might not consider "separate debts."[1]

In fact, a separation agreement has the potential to seem like (and even to "be") a fraudulent transfer, and if a bankruptcy of one or the other spouse ensues, the agreement may be examined with that in mind. But after a hotly-contested divorce it is unlikely that a bankruptcy court would upset a divorce court adjudication of property rights, even though that adjudication may lead to, or at least be followed by, the bankruptcy of one spouse or the other.[2]

In between a "separation agreement" and a hotly-contested adjudication, there is the "no fault" divorce decree, or the decree that results from an uncontested divorce proceeding.

In the case at bar, one of the legal determinations made by a matrimonial court judge in an uncontested divorce proceeding permitted the wife's matrimonial attorney to receive a $3500 payment towards his attorney's fees from the net proceeds from the sale of the marital residence, without there yet having been a final adjudication as to ownership of those proceeds.[3] Within 90 days thereafter, the wife, consulting with a different attorney, filed a Chapter 7 proceeding. The Chapter 7 Trustee has now sued the Debtor's matrimonial attorney to set aside the prepetition payment of attorneys fees as a preferential transfer under 11 U.S.C. § 547.

■ In the meantime, the matrimonial court has rendered a judgment dissolving the marriage and awarding the balance of the funds from the sale of the marital residence (also in the amount of $3500) to the Debtor "as and for past-due child support." The Trustee has not asserted a claim for those monies. Rather, he argues that if that latter "half" of the net proceeds from the sale of the jointly-owned marital residence has been awarded to the Debtor for that purpose, then the first "half" that the Debtor's attorney received must have been the *Debtor's* "half" of the proceeds of the marital residence. This argument is not illogical, but it does point up the analytic "disconnect" between matrimonial law

---

1. See, for example, 48A NYJur2d, Domestic Relations § 2513: "In effecting an equitable distribution of marital property the court is required to determine the relative responsibility of the parties for marital debts and make sure those debts are satisfied."

2. See, for example, 48A NYJur2d Domestic Relations § 2525: "The court in a matrimonial action is not limited by the parties' requests in its ability to grant an appropriate judgment, but may distribute the marital assets based on considerations of fairness" (citations omitted).

3. *See Id.* at § 2440: "Pursuant to the Domestic Relations Law, in any action or proceeding brought . . . for a separation, for a divorce . . . the court may direct either spouse . . . to pay such sum . . . directly to the attorney of the other spouse to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties" (citations omitted).

and bankruptcy law. Bankruptcy lawyers feel compelled to argue that if this woman owned half of the house, then at least half the proceeds from the sale of the house had to be property of hers [4]. In fact, that is not the case under matrimonial law, as this court understands it.

Rather, this court is persuaded by the cogent analysis by Bankruptcy Judge Teel in the case of *In re Hope,* 231 B.R. 403 (Bankr.D.C.1999), wherein Judge Teel explained that under the law of the District of Columbia—which seems to be identical in all material respects to the law of the state of New York [5]—no one owns the proceeds of the sale of "entireties" property until the divorce court adjudicates the competing "claims" to that fund.

Judge Teel stated: "On divorce, the debtor ceases to have the prior ownership interest he had in entirety's property and his ownership interest in such property is governed by state law (which may take into account such factors as the support obligations owed by the respective spouses). An award based on outstanding support obligations [for example] is thus not a transfer of the Debtor's rights in the property; rather, it is a determination of his lack of ownership in accordance with state law."

■ Though there may be a "transfer" involved, the court explained, it is one that merely recognizes a superior competing ownership claim. "The *division* of the property under D.C. law is an integral first step before the *ownership* can be determined," and in the meantime, "the debtor does not actually own one-half" of anything, "but only a claim ... based on the equity." And so a matrimonial court engages in a two-step process: first it adjudicates the claims and thereby divides the property based on the equities, and then it makes the resulting determination of ownership. In the first step, the matrimonial court "is free to consider antecedent debts *between the spouses* without preference law intruding." [Emphasis mine.]

That case was a preference action brought against a debtor's former spouse upon that trustee's argument that the interest in real estate that she received "for support obligations pursuant to separation agreements blessed by the divorce decree" was a payment for an "antecedent debt" and was a preferential payment to her. In the case before the *present* court, it is not clear whether the matrimonial court ordered the payment to the Debtor's attorney because that court believed it to be the Debtor's husband's duty to pay the Debtor for her attorney's fees (which would bring it squarely within the above analysis as to debts "between the spouses"), or whether the judge simply felt that making some payment to the Debtor's attorney was essential to the proper representation of the woman and the children in the matrimonial court. Because bankruptcy was not contemplated, there was no need for the matrimonial judge to be specific in this regard. Further, there was no need for the judge to be specific when subsequently awarding to the Debtor the remainder of proceeds "as and for past due child support." [6]

---

**4.** Indeed, law schools used to teach the law of *ferae naturae* ("wild animals") in Property class because they are supposedly the *only* "property" that have no owner.

**5.** See footnote 7, below.

**6.** The Debtor's husband had stabbed her seven times and was headed for jail. He was without counsel in the matrimonial proceeding and did not contest the dissolution of the marriage. *See Id.* at § 2353 (appropriate financial circumstances of the parties for the court to consider include, among others, maintenance payments the applicant spouse is receiving or will receive) (citations omitted).

If bankruptcy had been contemplated, and if all interested parties were represented, *including the creditors of the Debtor* (who, of course have no right even to "notice", let alone a right to be heard), and if the matrimonial court were consequently to have engaged in a detailed analysis, it might very well have reached exactly the same result, for very good reasons that would survive scrutiny under the "look-back provisions" of the Bankruptcy Code. We cannot presume that simply because the matrimonial court was not called upon to make that analysis, its award is to be undone as a "preference." It was a judicial act in a non-collusive proceeding regarding a corpus that was in the custody of that court before any bankruptcy petition was ever filed, and attorneys fees are commonly addressed in such proceedings. (See footnote 3 above.)

This Court concludes, at least with regard to the narrow fact pattern currently before the court, that it is in full agreement with the statement of the bankruptcy court in *In re Hope*, that "if the divorce decree is not collusive and divides the property in accordance with considerations allowed by state law, . . . and if there [is] no suggestion that the divorce decree was the result of a collusive effort . . . to hinder, delay and defraud creditors . . . [then] the divorce decree [is] not a transfer but is [rather] a division of marital property."[7]

This Court would add only that were there any hint of attorney overreaching or of "bankruptcy planning" in front of the matrimonial court, this Court would take a closer look. There being no such hints in this case, the Trustee's motion for judgment on the pleadings is denied and the adversary proceeding is dismissed, as has been requested in the Answer. Parties will bear their own costs, however.

SO ORDERED.

---

7. As to New York law's similarity to that of the District of Columbia, see *Id.* at § 2469, wherein it is stated: "Unlike the statute governing determinations as to title to property [Domestic Relations Law], the Equitable Distribution Law is not grounded in traditional common-law property concepts, and thus the court's role thereunder is not to determine who holds title, but rather to determine whether property is marital or separate, and then to equitably distribute the marital property" (citations omitted).