In re Allan Page KELLER, Debtor.

Jean R. KELLER, Toledano & Wald, David E. Wald, Appellants,

v.

Allan Page KELLER; Theodor C. Albert, successor to Sheila Fell, Chapter 7 Trustee, Appellees.

BAP No. CC–94–1850–VJO.
Bankruptcy No. SA91–32957 JR.
Adv. No. SA93–1264 JR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued March 22, 1995.

Submitted April 18, 1995.

Decided Aug. 17, 1995.

James Toledano, Irvine, CA, for appellants.

Wendy J. Mickelson, Santa Ana, CA, for appellees.

## OPINION

Before VOLINN, JONES and OLLASON, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

## OVERVIEW

The debtor's former wife and her attorney appeal a summary judgment which concluded that transfer of certain proceeds from the sale of the family residence pursuant to post-dissolution orders by the Superior Court issued within 90 days of the debtor's bankruptcy constituted an avoidable preference pursuant to 11 U.S.C. § 547.[1] We REVERSE the summary judgment.

## FACTS AND PROCEEDINGS BELOW

The chapter 7 debtor is Allan Page Keller. Appellants are Jean R. Keller, the former wife, Toledano & Wald, and David E. Wald, counsel of record for the wife in both state court and bankruptcy court.

A judgment dissolving the Keller marriage was entered in the Superior Court for Orange County (the Family Law Court) on January 31, 1990. Pursuant to the judgment, Allan was permitted to remain in the family residence with the proviso that the residence was to be sold and the net proceeds placed in a blocked account. Each spouse was assigned an initial equal share of the proceeds, with ultimate distribution subject to various adjustments provided for in the dissolution judgment and as necessary by subsequent orders of the court.

On February 21 and 25, 1991, the Family Law Court held consolidated hearings on orders to show cause filed by Jean and Allan and made oral rulings, which will be referred to as the "February orders." The court subsequently entered the February orders on April 23, 1991. These orders held Allan in contempt for failure to comply with past child and spousal support orders and ordered him to cooperate in the sale of the residence. The amount of support payments was adjusted, and, pertinent to the instant appeal, adjustments were also made as to distribution of the net proceeds of the sale of the residence based on Allan's conduct as follows: 1) Because of failures to pay child and spousal support, the sum of $75,000.00 was ordered

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

to be held in a statutory support "trust account"[2] by Toledano & Wald for future distribution to Jean for all support payments; 2) Because of Allan's lack of cooperation and bad faith in the sale of the family residence, the court ordered him to make a fee payment of $10,000.00 to Toledano & Wald. The court ordered that these two sums be deducted from Allan's share of the net sale proceeds prior to distribution.

The sale of the residence closed on March 28, 1991, and the deed of sale was recorded on the morning of March 29, 1991. One-half of the net sale proceeds equalled the sum of $167,259.97. After Toledano & Wald made the adjustments and payment ordered by the state court, Allan's share of the net proceeds was exhausted, leaving him owing the sum of $391.83 on the court's charges. Allan filed a chapter 7 petition the afternoon of March 29, after the deed of sale had been recorded. The February orders and the sale of the residence therefore occurred within 90 days of the date of filing; actual distribution of the net proceeds occurred post-petition.

Allan appealed the February orders to the state court of appeals. The orders were reversed and remanded in June 1992. Our record does not indicate what became of the $85,000 affected .by the reversal. Further proceedings in the Family Law Court apparently have continued without reference to Allan's bankruptcy.

In March 1993, the trustee filed a complaint to recover money or property as preferences pursuant to 11 U.S.C. §§ 547 and 550. The trustee moved for summary judgment,[3] and defendants opposed it.

After a hearing on April 27, 1994, the bankruptcy court found that the bankruptcy

estate had a non-exempt property interest in the net proceeds. Deductions from this amount that had been ordered by the state court more than 90 days prior to the filing of the petition were not avoidable. However, adjustments to the distribution made pursuant to the February orders, $75,000 for future support payments and $10,000 for attorney fees, were avoidable preferences.[4] The judgment held the defendants jointly and severally liable.[5] Defendants filed this timely appeal.

## ISSUE PRESENTED

Whether the February adjustments to the proceeds resulted in a recoverable "transfer of an interest of the debtor in property" pursuant to 11 U.S.C. § 547(b).

## STANDARD OF REVIEW

 A summary judgment is reviewed *de novo*. *In re Florida*, 164 B.R. 636, 639 (9th Cir. BAP 1994). The nature of a debtor's interest in property, although largely a question of fact, is based on the interpretation of legal principles. " 'Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable *de novo*.' " *In re Roosevelt*, 176 B.R. 200, 204 (9th Cir. BAP 1994) (quoting *Mayors v. C.I.R.*, 785 F.2d 757, 759 (9th Cir.1986)). Findings of fact are reviewed for clear error. Fed.R.Bankr.P. 8013.

## DISCUSSION

Under various circumstances, the Bankruptcy Code gives the trustee power to reach back before the filing of the bankruptcy peti-

---

**2.** California's Family Code provides for such support trusts under certain circumstances. *See,* "Child support security deposit; trust account." Cal.Fam.Code § 4560 (West 1994).

**3.** The trustee initially sought to recover an entire half of the net proceeds, $167,259, but it has since been conceded that sums awarded to Jean prior to the 90–day reach-back period of § 547 cannot be reached.

**4.** The total amount deducted by the earlier and unavoidable state court orders totalled $83,-389.12, leaving a balance of $83,970.85 out of a

one-half share of the net proceeds. After factoring in some minor credits and charges, the order as drafted by the trustee and signed by the court arrived at a judgment amount of $84,608.17.

**5.** The trustee contends that defendants never argued against joint and several liability below, and therefore, the panel should not entertain argument on the issue now. Beyond naming Toledano & Wald as defendants, the trustee presented no argument for joint and several liability below. In light of our ruling, we need not address this issue.

tion and set aside or avoid certain transactions between the debtor and others. Pursuant to 11 U.S.C. § 547, the trustee may recover transfers by the debtor in favor of certain creditors over others in anticipation of bankruptcy, which would otherwise become part of the estate subject to equal distribution to the entire creditor pool.[6]

As discussed below, Allan's ultimate right to receive the initially designated one-half of the net proceeds was to be measured by or be dependent upon orders which would be issued by the state court. The estate was subject to these rights; the bankruptcy filing could not enlarge them. By declaring the February orders an avoidable preference, the bankruptcy court liquidated the debtor's interest at the 50 percent starting point, thereby disregarding the state court's injunction that the fund was subject to such further orders as might be necessary to finally adjust the rights of the parties. The record in the state court made it apparent that the debtor's intransigence would lead to an end point where his initial 50 percent allocation would be subject to substantial reduction in favor of the wife. The bankruptcy court nevertheless viewed Allan's one-half of the net sale proceeds as a vested interest, holding that reductions in his share constituted transfers "of an interest of the debtor in property."

■ Appellants argue that Allan's rights in the proceeds were subject to adjustment and determination by the state court as the Family Law Court ordered in the final judgment of dissolution, and his rights in the proceeds therefore could not vest until the court so decreed.[7] We agree with the appellants' essential premise that the debtor never possessed a vested right to one half of the net sale proceeds. Consequently, adjustments made prior to distribution were not a

transfer of "an interest of the debtor in property."

Referring to § 547, the Ninth Circuit has stated, "The purpose of this provision is to discourage creditors from racing to the courthouse to dismember the debtor during his slide into bankruptcy and to facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." *In re Ehring*, 900 F.2d 184, 186 (9th Cir.1990) (citations and internal quotation marks omitted). This guiding principle should be approached with caution in the context of distribution of a marital estate pursuant to dissolution orders entered in state court proceedings.

■ As noted above, the trustee may recover a preferential transfer only where the transfer was of "an interest of the debtor in property." Such property "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). Thus, when analyzing questions regarding the distribution of property of a dissolved marital estate involving a non-debtor spouse, the trial court must determine whether the property at issue is or could be considered property of the debtor's estate. *Matter of Paderewski*, 564 F.2d 1353, 1356 (9th Cir.1977).[8] The focus should be not on what interest the transferee received, but rather on the interest, if any, of the debtor in the property. *Id.* at 1357.

■ In a non-dissolving marriage, community property is property of the estate. *In re Teel*, 34 B.R. 762, 764 (9th Cir. BAP 1983); § 541(a)(2)(A) and (B). When a bankruptcy petition is filed prior to the final

---

**6.** [T]he trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition. . . .
11 U.S.C. § 547(b).

**7.** Appellants also contend that Allan was not insolvent when the petition was filed. As we decide this appeal on different grounds, we decline examination of this issue.

**8.** *Paderewski* similarly dealt with the effect of a judgment which ordered a split of proceeds from the sale of property, noting in passing that an equal division of property does not compel an equal division of each particular asset. *Id.* at 1357.

disposition of property between divorcing spouses, the community property comes within the jurisdiction of the bankruptcy court to assure fairness to the creditors of the individual spouses and the marital estate. Where the bankruptcy court has exclusive jurisdiction over its distribution, division of property by the state court is precluded:

> The jurisdiction of the bankruptcy court is exclusive because the initiation of divorce or dissolution proceedings does not terminate either spouses [sic] management and control over community property by placing the community property in custodia legis of the divorce court.

*Teel,* 34 B.R. at 764 (quoting 4 *Collier on Bankruptcy* ¶ 541.15 (15th Ed.1983)).

■ Once dissolution has been accomplished, however, the final judgment is *res judicata* as to the division of property and is binding on the bankruptcy trustee. *Paderewski,* 564 F.2d at 1356. "Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914; 918, 59 L.Ed.2d 136 (1979). The bankruptcy court therefore must look to state law to determine the nature of the estate's property rights. In the instant case, those rights were defined and circumscribed by the judgment of the Family Law Court.

The Family Law Court entered its final judgment of dissolution well over a year prior to the commencement of bankruptcy proceedings. In that judgment, the court reserved continuing jurisdiction to oversee and adjust distribution between the spouses of the sale proceeds. The relevant paragraph of the judgment states:

> The proceeds arising from the anticipated sale of the [property], after payment of mortgages, costs of sale and brokers' commissions, shall be deposited into an interest bearing trust account in a depository account as agreed upon by both counsel of record. Except as provided elsewhere in this Judgment, no withdrawals may be made from this account without further order of the Court or mutual consent of both counsel of record. **All proceeds shall be distributed equally between Petitioner and Respondent, however, any payment to be made from either party's portion of the proceeds shall be made directly from said blocked account prior to said party receiving his or her distributive share of the account.**

*Judgment of Dissolution of Marriage,* ¶ 3C at 5:2–14 (January 31, 1990) (emphasis supplied).

Other sections of the judgment reference the above ¶ 3C: ¶ 3J awards Jean $24,439.00 as her share of a 1988 bonus, "from Respondent's portion of the net proceeds from the sale of the family residence;" ¶ 10 awards Jean an "equalizing payment in the sum of $5,800.00 from Respondent's share of the proceeds arising from the sale of the family residence;" and ¶ 15 awards to Jean's attorneys, "the sum of $10,000.00, payable directly from escrow from Respondent's share of proceeds arising from the sale of the family residence." This language makes clear that the court's reference to a one-half interest was not a grant, but an initial allocation which was a starting point for further calculations.

The trustee points out that the judgment expressly mentions only certain future adjustments and does not mention those made in the February orders, i.e., $10,000 in attorney fees and $75,000 in trust for future support payments. While this contention is accurate, the trustee's conclusion that the order thus limited the court's jurisdiction over the sale proceeds does not follow. The judgment not only reserves jurisdiction to make certain express adjustments, but it contains the provisional language, "any payment to be made," which indicates an intent to retain jurisdiction to make other adjustments as necessary.

■ Once the Family Court ordered the residence sold and retained jurisdiction to approve disbursement of the proceeds, those proceeds were for all practical purposes held in *custodia legis* by that court. *See, e.g., Rosenthal v. Rosenthal,* 197 Cal.App.2d 289, 315, 17 Cal.Rptr. 186 (1961). As such, they were at all times subject to distribution pursuant to the court's direction, beyond the reach of the debtor, alienation by his creditors, and were not part of the bankruptcy estate. "The Bankruptcy Act generally does not vest the trustee with any better right or

title to the bankrupt's property than the bankrupt had at the moment of bankruptcy." *Paderewski,* 564 F.2d at 1356 (citation omitted).

## CONCLUSION

Allan's future entitlement to any of the proceeds from the sale of the house was reserved by the Family Law Court in its original judgment of dissolution. It is well-settled that "the Receiver can take only what the bankrupt has when he files his petition." *In re Barasch,* 439 F.2d 1393, 1397 (9th Cir.1971). Whether Jean and her attorney will retain any portion of those proceeds in light of the subsequent reversal on appeal of the February orders by the state appellate court is a question we do not address here. That is a matter to be pursued in the state court, not the bankruptcy court. The judgment on appeal is REVERSED.