In re John MANTLE, Debtor.

Dorothy M. MANTLE, Appellant,

v.

James A. DUMAS, Jr., Chapter
7 Trustee, Appellee.

BAP No. CC–95–1868–VMeO.
Bankruptcy No. LA93–33940 BR.
Adv. No. LA94–04264 BR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 21, 1996.

Decided May 17, 1996.

John A. Tkach, Pasadena, CA, for Dorothy M. Mantle.

Richard Malatt, Los Angeles, CA, for James A. Dumas, Jr.·

Before: VOLINN, MEYERS, and OLLASON, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

## FACTUAL BACKGROUND AND PROCEEDINGS

The debtor, John Mantle, and the appellant, Dorothy Mantle, were married in June, 1985. Before her marriage to Mr. Mantle, Ms. Mantle owned certain real property located in San Fernando, California. In August, 1985, Ms. Mantle sold the property and received $79,373.76 in net proceeds, which she placed in an individual checking account.

During the same year, the Mantles contracted to purchase a home for $238,900. Ms. Mantle made a downpayment of $65,306 (including $3,000 in closing costs) from the checking account. The Mantles jointly executed a promissory note, secured by a deed of trust on the property, for the outstanding balance of $175,000. The sale closed on or about September 13, 1985. Title to the property was held in the names of John Mantle and Dorothy M. Mantle, husband and wife, as joint tenants. Payment on the note was made from community funds. The record indicates that Ms. Mantle also spent $3,824 from the above-mentioned individual checking account to purchase a house alarm system.

The Mantles separated in June, 1990. The debtor initiated divorce proceedings by filing a Petition for Dissolution of Marriage on or about October 10, 1990 (the "Petition"). In the Petition, Mr. Mantle requested, *inter alia*, that the downpayment on the community residence be confirmed as Ms. Mantle's separate property. Neither party had executed a writing authorizing that the downpayment from her separate funds be treated otherwise.

The Mantles sold the house in December, 1991, in the course of the divorce proceedings pursuant to court order. After payment of the amount owing on the note and closing costs, the balance of $67,295.12 was placed into escrow pending further order of the court. On July 6, 1993, before the California superior court could enter an order designating the Mantles' respective assets and liabilities, Mr. Mantle filed a bankruptcy petition under Chapter 7.

In November, 1994, the bankruptcy trustee initiated an adversary proceeding against the escrow company and Ms. Mantle seeking a declaration that the funds held in escrow were estate property and asking that they be turned over to the trustee. In her response, Ms. Mantle requested that the bankruptcy court declare the funds her separate property and transfer them to her.

Upon stipulated facts, the court held that since the escrowed funds were proceeds from the sale of community property, they remained community property. The court ruled that while state law provided that the proceeds could be confirmed to Ms. Mantle as her separate property pursuant to California Family Code section 2640,[1] (hereinafter· Fam.Code § 2640) because the state court had not entered the reimbursement order at the time bankruptcy was filed, the funds had not lost their character as community property and thus were an asset of the estate pursuant to 11 U.S.C. § 541(a)(2).[2] Ms.

---

**1.** Section 2640 provides, in pertinent part: "in the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source.... As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan." Cal.Fam.Code § 2640 (West 1994).

**2.** Unless otherwise stated, all references to "sections", "§" and "rules" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.

Section 541(a)(2) provides, in pertinent part: "[An] estate is comprised of all of the following property, wherever located and by whomever

Mantle timely appealed the trial court's judgment.

## ISSUE

The narrow issue tendered to the court below and on appeal is whether under Fam. Code § 2640, the escrowed funds were community property and thus property of the estate under Section 541(a)(2).

## STANDARD OF REVIEW

"The nature of a debtor's interest in property, although largely a question of fact, is based on the interpretation of legal principles." *In re Keller*, 185 B.R. 796, 798 (9th Cir. BAP 1995). "Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable de novo." *Mayors v. C.I.R.*, 785 F.2d 757, 759 (9th Cir.1986). As the parties stipulated to the facts, they need not be reviewed on appeal.

## DISCUSSION

### Community property jurisdiction under the Bankruptcy Code

■ In a non-dissolving marriage, community property is property of the estate. *In re Teel*, 34 B.R. 762, 764 (9th Cir. BAP 1983); §§ 541(a)(2)(A) and (B). When a bankruptcy petition is filed prior to the final disposition of property between divorcing spouses, the community property generally comes within the jurisdiction of the bankruptcy court to assure fairness to the creditors of the individual spouses and the marital estate. *In re Keller*, 185 B.R. at 799. However, only community property that is under the debtor's control or is "liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable"

held: .... All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim

falls within the definition of property of the estate. § 541(a)(2)(B).

■ Section 541(a), however, "merely defines what interests of the debtor are transferred to the estate. It does not address the threshold question of the debtor's interest in a given asset." This question is resolved "by reference to nonbankruptcy law." *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986). "Property interests are created and defined by state law." The bankruptcy court must apply state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). As the Supreme Court explained,

> [u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Id.* at 55, 99 S.Ct. at 918 (quoting *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350–51, 5 L.Ed.2d 323 (1961)).

In analyzing whether, pursuant to Section 541(a)(2), the escrowed funds were an asset of the estate, the trial court concluded that because the state court had not issued the reimbursement order at the time Mr. Mantle filed bankruptcy, the funds were community property and, therefore, property of the estate. The appellant contends that, nevertheless, under Fam.Code § 2640, Ms. Mantle's downpayment remained separate property throughout the couple's ownership of the house.

■ Under California law, prior to sale of the house, the Mantle's residence would have been properly characterized as community property.[3] *See* William P. Hogoboom and Donald B. King, *Cal. Practice Guide: Family Law* 8–427 (1995) (stating that a spouse's ability to trace the monies used to purchase

against the debtor's spouse, to the extent that such interest is so liable."

3. The bankruptcy court found that Ms. Mantle had admitted that the residence was community property and that she was estopped from denying it.

community property "is insufficient to establish a separate property interest" in community property). However, under Fam.Code § 2640, a spouse who makes a downpayment with separate funds retains a continuing and supervening property interest beyond the community interest to the extent of the separate funds invested in the property. Once the Mantles' residence was sold at the direction of a court with jurisdiction over the divorcing couple and the funds placed in escrow pending final entry of the divorce decree, Ms. Mantle had a vested interest in the proceeds of the sale to the extent of her separate contribution so long as she had not actively divested herself of the right to claim the separate property interest.

Underlying the California statute is a modification of the community property presumption: the separate property interest is preserved even where a spouse uses it to purchase a community asset. *See* California Family Code § 752. The California Supreme Court described the effect of Fam. Code § 2640 as a "180–degree departure from former law" and explained: "the tables are turned so that the separate property interest [of a spouse] *is now preserved* unless the right to reimbursement is waived in writing." *In re Marriage of Fabian,* 41 Cal.3d 440, 224 Cal.Rptr. 333, 339, 715 P.2d 253, 259 (1986) (emphasis supplied). The court went on to say that, in the absence of a writing, "the funds must be characterized as separate property." *Id. See also In re Marriage of Witt,* 197 Cal.App.3d 103, 107, 242 Cal.Rptr. 646 (1987) (stating that Fam.Code § 2640 "presently creates a substantive right of reimbursement"); *In re Marriage of Perkal,* 203 Cal.App.3d 1198, 1202, 250 Cal.Rptr. 296 (1988) (stating that "Husband has a 'property right' to seek reimbursement from Wife"); *Hogoboom and King, supra,* at 8–443 (stating that the *Fabian* court found that Fam. Code § 2640 created a new property right in the contributing spouse—i.e., a "property right of reimbursement"). In addition, the *Witt* court specifically rejected the argument that the statute "only becomes applicable when a trial court divides property, not when the property is initially transferred to the marital community." *Witt,* 197 Cal.App.3d at 107, 242 Cal.Rptr. 646. Thus, while the statute is couched in terms of reimbursement, the right to reimbursement is rooted in the contributing spouse's prior separate property interest.

■■■ The state law governing distribution of property between divorcing spouses provides that traceable separate property, whether or not it is contributed to a community asset, retains its separate character and must be reimbursed to the contributing spouse. A court has no discretion to direct otherwise. *See Hogoboom and King, supra,* at 8–442 (stating that "the right to reimbursement is absolute" if Fam.Code § 2640 applies unless a party has made a written waiver of the right). *See also Fabian,* 224 Cal.Rptr. at 339, 715 P.2d at 259 (stating that in the absence of a written waiver of the right to reimbursement the funds must be characterized as separate property); *In re Chenich,* 87 B.R. 101, 104 (9th Cir. BAP1988) (stating that "[t]he [divorce] court is given no discretion to adjust the division of assets to reflect equitable considerations unless the parties have a written agreement" (citing Legislative Committee Comment to Cal.Civ. Code Section 4800, later recodified as Fam. Code § 2640)), *app. dism.,* 883 F.2d 1023 (9th Cir.1989). It is clear therefore that under Fam.Code § 2640, upon the sale of a house in a divorce proceeding where the facts are not in dispute, a trial court judge would be required to order the reimbursement of all of a spouse's separate property contributions to the purchase of the community property. In such a case, an order of reimbursement is, for all practical purposes, a ministerial act.

Therefore, whether a reimbursement order declaratory of the Ms. Mantle's separate interest under Fam.Code § 2640 was issued prior to the time Mr. Mantle's bankruptcy was filed is not dispositive as to the nature of Ms. Mantle's interest in the proceeds from the pre-bankruptcy sale of the property.

Where a divorcing couple has, pursuant to court order, sold their residence and placed the proceeds in escrow pending the final order of the state court, the contributing spouse's separate interest in the escrowed funds subsists prior to the entry of judgment by the state court. Therefore, the escrowed

funds in this case did not fall within the definition of property of the estate contained in Section 541(a)(2).

### CONCLUSION

Ms. Mantle's separate interest in the escrowed funds was prescribed and identified under California law. State law is determinative and warrants her recovery of the funds. The trustee has no right to possession of the escrowed funds. We reverse and remand to allow the trial court to determine what portion of the escrowed funds were contributions within the meaning of Fam. Code § 2640 and for entry of an order distributing to Ms. Mantle the contributions she made from her separate individual checking account or such other funds to which she would be entitled pursuant to Fam.Code § 2640.