**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-17-1112-TaLS |
| ) | CC-17-1133-TaLS |
| ) | (Cross Appeals) |
| LESLIE LOPEZ ROMAN and DONNA ) | |
| BARAHONA ROMAN, ) | Bk. No.   6:13-bk-22482-MH |
| ) | |
| Debtors. ) | Adv. No.  6:14-ap-01183-MH |
| _____ ) | |
| ) | |
| ROBERT S. WHITMORE, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
|     Appellant/Cross-Appellee, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| INNOVATION VENTURES, LLC; ) | |
| INTERNATIONAL IP HOLDINGS, LLC, ) | |
| ) | |
|     Appellees/Cross-Appellants.) | |
| _____ ) | |

Argued and Submitted on September 29, 2017
at Pasadena, California

Filed – November 20, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark D. Houle, Bankruptcy Judge, Presiding

_____

Appearances:     Thomas J. Eastmond of Best Best & Krieger LLP
                 argued for appellant and cross-appellee;
                 Beverly Ann Johnson of Johnson & Bertram LLP
                 argued for appellees and cross-appellants.

_____

Before:   TAYLOR, LAFFERTY, and SPRAKER, Bankruptcy Judges.

_____

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

## INTRODUCTION

We don't know what ingredients chapter 7[1] debtors Leslie and Donna Roman used to make their energy drink, but we know they marketed it as 5-Hour ENERGY. No doubt the name sounds familiar; Innovation Ventures, LLC and International IP Holdings, LLC ("5-Hour ENERGY Owners") make a well-known product bearing that name. Debtors' labeling and packaging duplicated the trade dress of the better known product. Not surprisingly, they enjoyed some marketing success until the 5-Hour ENERGY Owners got wind of Debtors' enterprise.

Prepetition, the 5-Hour ENERGY Owners brought a federal anti-counterfeiting lawsuit and obtained orders freezing Debtors' bank accounts. But, more than 90 days prepetition, they agreed to lift the freeze; Debtors concurrently agreed to deposit all of the funds in their bank accounts into an account owned by their attorney, pending final resolution of the lawsuit or the parties' further agreement. Then, only six days prepetition, Debtors and the 5-Hour ENERGY Owners settled the lawsuit. Debtors got a release and avoided a potentially nondischargeable judgment; the 5-Hour ENERGY Owners got all the money.

Debtors' chapter 7 trustee, who examined the transaction with an eye toward the interests of unpaid creditors, brought a preference action to recover the funds. On cross-motions for

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

summary judgment, the bankruptcy court entered judgment in favor of the 5-Hour ENERGY Owners.

On the current record, we conclude that the bankruptcy court's reasoning was erroneous in part. Accordingly, we AFFIRM in part, REVERSE in part, VACATE the judgment, and REMAND for further proceedings consistent with this decision.

**FACTS**

The majority of the facts are undisputed.

In October 2012, the 5-Hour ENERGY Owners brought an anti-counterfeiting lawsuit in the United States District Court for the Eastern District of New York. They eventually amended the complaint to add Debtors as defendants and promptly obtained orders freezing Debtors' assets, including Bank of America accounts containing about $426,030.53 (the "Funds").

More than 90 days prepetition, Debtors and the 5-Hour ENERGY Owners entered into a stipulation (the "First Agreement") to resolve the asset freeze order. In relevant part, the First Agreement stated:

> The [Debtors] and [5-Hour ENERGY Owners] have agreed that, in exchange for [5-Hour ENERGY Owners'] agreement to release the Bank Accounts, the [Debtors] will transfer all assets from the Bank Accounts into the attorney trust account of their undersigned counsel, the Law Office of Barry K. Rothman (the "Attorney Escrow Account") pending either final resolution of this action or written agreement between [5-Hour ENERGY Owners] and [Debtors].

Bankruptcy Court's Memorandum Decision and Order Denying Trustee's Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment ("Mem. Dec."), April 7, 2017 at 2. That same day, the district court entered an order approving the First Agreement.

3

Still more than 90 days prepetition, Debtors transferred the Funds to Mr. Rothman's account. The parties describe the account differently: the 5-Hour ENERGY Owners call it an "attorney escrow account," while the Trustee calls it a "client trust account." We call it simply: the Account.

Six days prepetition, Debtors and the 5-Hour ENERGY Owners settled the district court action, contingent "upon the payment by" Debtors to the 5-Hour ENERGY Owners of $426,030.53, "the amount currently held in the escrow account . . . ." July 16, 2013 Agreement (the "Settlement Agreement") at 2. Three days prepetition, Mr. Rothman transferred the Funds to an attorney for the 5-Hour ENERGY Owners.

**Bankruptcy proceedings.** Debtors then filed a chapter 7 bankruptcy petition. The Trustee later brought a preference action against the 5-Hour ENERGY Owners to avoid and recover the Funds.

The parties filed cross motions for summary judgment to resolve the crux of the dispute: which transfer deprived Debtors of their interest in the Funds, the transfer into the Account per the First Agreement or the transfer from the Account per the Settlement Agreement. The former is outside the 90-day preference period; the latter is well within it. The bankruptcy court considered briefing and heard argument at hearings. It also issued two tentative rulings.

The first tentative ruling is not in the record or available from the docket, but we located the second tentative ruling as an exhibit to another document. It concluded that the Trustee was entitled to summary judgment because the operative

4

transfer was the later one. Discussing the parties' legal theories, the bankruptcy court reasoned that the transfer into the Account did not deprive Debtors of their interest in the Funds because the First Agreement did not create an escrow under either California or New York law; it also concluded that the Funds were not placed in custodia legis. The bankruptcy court thus tentatively determined that the Funds were transferred immediately before the petition date under the Settlement Agreement. As all the other elements for a preferential transfer were met, the bankruptcy court tentatively concluded that the transfer of the Funds was avoidable.

After oral argument, the bankruptcy judge took the matter under submission and, some time later, requested supplemental briefing: "After reviewing the record, and the cross motions for summary judgment, it appears as though a genuine issue of material fact exists . . . ." June 17, 2016 Order Requesting Supplemental Briefing at 2. More particularly: "it appears that this Court must interpret the First Agreement to decide whether the parties entered into either an agreement to create an escrow account . . . or an agreement to place $426,030.53 of contested funds . . . into an account that would serve as a mere depository . . . ." Id. The order then discussed the conflicting evidence.

The parties submitted supplemental briefing. Later, the bankruptcy court issued a memorandum decision, reaching a conclusion different from both its second tentative ruling and the view suggested by its order requesting supplemental briefing. In a consolidated memorandum decision and joint

5

order, it denied the Trustee's motion for summary judgment and granted the 5-Hour ENERGY Owners' motion. It then entered a final separate judgment in the 5-Hour ENERGY Owners' favor.[2] The parties timely appealed and cross-appealed. We address both appeals in this decision.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(F). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in granting the 5-Hour ENERGY Owners' motion for summary judgment?

Did the bankruptcy court err in denying the Trustee's motion for summary judgment?

## STANDARD OF REVIEW

We review the bankruptcy court's grant or denial of summary judgment de novo. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). And we may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground. Id.

---

[2] In an abundance of caution given that no party disputes the bankruptcy court's ability to enter a final judgment in this case, we reviewed the record for evidence of express consent to entry of this final judgment. We could not locate a statement of consent in the record on appeal. We assume, however, that consent was provided in some fashion or that consent can be implied. Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1948 (2015).

6

**DISCUSSION**

This dispute is about which transfer divested Debtors of their interest in the Funds. Before the trial court, the 5-Hour ENERGY Owners argued that the First Agreement (and accompanying order) placed the Funds either in custodia legis or in escrow. The bankruptcy court found that in custodia legis did not apply and declined to enter summary judgment on the escrow theory. But in the final event, the bankruptcy court concluded that the 5-Hour ENERGY Owners were entitled to judgment in their favor based on federal law.

On appeal and cross-appeal, the 5-Hour ENERGY Owners: first, reargue the in custodia legis theory; second, reargue the escrow theory; third, raise new legal theories never ventilated to the trial court; and, only fourth, defend the bankruptcy court's ruling. For his part, the Trustee contends the bankruptcy court should not have entered summary judgment in the 5-Hour ENERGY Owners' favor but instead should have entered judgment for him.

We conclude that the bankruptcy court properly decided that the Funds were not in custodia legis and properly declined to enter summary judgment for either party on the escrow theory. We also conclude that on this record the 5-Hour ENERGY Owners' new theories do not support summary judgment in its favor. We also determine, however, that the bankruptcy court erred in one respect: it could not enter judgment in the 5-Hour ENERGY Owners' favor without first consulting relevant state law. Because it did not, we reverse.

7

**A.   Relevant law.**

**Summary judgment.**  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (applied in adversary proceedings by Rule 7056). The bankruptcy court "views the evidence in the light most favorable to the non-moving party" and "draws all justifiable inferences in favor of the non-moving party."  Fresno Motors, LLC, 771 F.3d at 1125 (citing Cnty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  Id.  Finally, summary judgment "is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Id. (quotation marks omitted).

**Preference actions.**  Section 547(b) permits a bankruptcy trustee to avoid "any transfer of an interest of the debtor in property" if a number of conditions are met.  11 U.S.C. § 547(b).  Relevant here is the condition that the transfer was made either "on or within 90 days before the date of the filing of the petition . . . ."  11 U.S.C. § 547(b)(4)(A).

The Code does not define "an interest of the debtor in property . . . ."  Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.), 104 F.3d 293, 295 (9th Cir. 1997).  But the Supreme Court "has interpreted the term to mean 'that property that would have been part of the estate had it not been transferred

8

before the commencement of bankruptcy proceedings.' " Id. (quoting Begier v. I.R.S., 496 U.S. 53, 58 (1990)).

Property of the estate, under § 541(d), includes "all property in which the debtor has legal title except 'to the extent of an equitable interest in such property that the debtor does not hold.'" Id. (quoting 11 U.S.C. § 541(d)).

**B.** **The bankruptcy court properly concluded that the funds were not in custodia legis.**

Black's Law Dictionary defines in custodia legis as "[i]n the custody of the law." Black's Law Dictionary (10th ed. 2014). "The phrase is traditionally used in reference to property taken into the court's charge during pending litigation over it." Id.

Before the bankruptcy court, the 5-Hour ENERGY Owners asserted that when the Funds were transferred into the Account by the First Agreement and the district court's accompanying order, they were placed in custodia legis and thus were beyond the reach of the Trustee's § 547 avoidance powers. The bankruptcy court disagreed; it reasoned that the funds were not in the custody of the district court (i.e., in custodia legis) because "they could be released by agreement of the parties." Mem. Dec. at 4.

On appeal, the 5-Hour ENERGY Owners' only argument on this point is based on Keller v. Keller (In re Keller), 185 B.R. 796 (9th Cir. BAP 1995). In Keller, a judgment of dissolution from the California family law court allowed the husband to remain in the family residence pending its sale. Id. at 797. Each spouse was to receive "an initial equal share of the [sale proceeds

9

from a blocked account], with ultimate distribution subject to various adjustments provided for in the dissolution judgment and as necessary by subsequent orders of the court." Id. When the residence sold, the family court, based on its retained jurisdiction over the sale proceeds, adjusted the husband's share of the proceeds to account for his failure to pay child support and sanctions. Id. at 798. The husband then filed bankruptcy, and the chapter 7 trustee successfully obtained avoidance of the adjustments as preferential transfers. Id. On appeal, the Panel reversed, determining that where the family court both ordered the residence sold and retained jurisdiction to approve disbursement of the proceeds, the "proceeds were for all practical purposes held in custodia legis by that court." Id. at 800.

Here, neither the First Agreement nor its accompanying order say that the district court retains exclusive jurisdiction over the Funds or the Account. Instead, they allow the parties to release the Funds by written agreement. This latitude contrasts starkly with In re Keller, where the state court had exclusive control over disbursement of the proceeds.

Accordingly, In re Keller does not support the 5-Hour ENERGY Owners' position, nor does it suggest that we should affirm the grant of summary judgment for the 5-Hour ENERGY Owners on this basis. Here, Debtors and the 5-Hour ENERGY Owners contracted around an in custodia legis result by reserving joint control over the Funds exclusive of the district court's jurisdiction. In sum, we affirm the bankruptcy court's determination that the Funds were not being held in custodia

10

_legis_ once they were deposited into the Account.

## C. The bankruptcy court correctly declined to enter summary judgment for either party on the escrow theory.

The parties agree that funds properly in escrow, generally, are not considered estate property. 5 Collier on Bankruptcy ¶ 541.09[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.). They disagree, however, about whether the First Agreement created an escrow that divested Debtors of their interest in the Funds. On appeal, they discuss California escrow law.[3]

In its memorandum decision, the bankruptcy court did not decide the escrow issue. And in its order directing supplemental briefing, the bankruptcy court identified the parties' intent in entering into the First Agreement as a genuine issue of material fact that precluded entry of summary judgment for either party on this theory.

**The 5-Hour ENERGY Owners' motion: the 5-Hour ENERGY Owners conceded that a factual dispute existed on the escrow theory.** We treat the 5-Hour ENERGY Owners' argument that they are entitled to summary judgment on an escrow theory as explicitly waived. In their July 1, 2016 supplemental brief, they conceded that a genuine issue of material fact existed about whether the funds were in escrow and asserted that neither party was entitled to summary judgment on that subject. They are free to change their position in front of the trial judge, but we decline to allow such a seismic shift on appeal. United States

---

[3] The parties argue the issues on appeal under California law. In this memorandum, we thus assume, without deciding the issue, that California law applies.

11

v. Patrin, 575 F.2d 708, 712 (9th Cir. 1978) ("As a general rule, a federal appellate court does not consider an issue not passed upon below. It is immaterial whether the issue was not tried in the district court because it was not raised or because it was **raised but conceded** by the party seeking to revive it on appeal." (citations omitted) (emphasis added)).

We acknowledge an exception where the issue is one of law and the facts are fully developed by the trial court. Id. at 712. But to invoke the exception, we must determine that the Trustee would not be prejudiced if we allow the 5-Hour ENERGY Owners to change position on appeal. Id. We cannot make such a determination on this record.

**The Trustee's motion: The Trustee is not entitled to summary judgment because there is a dispute of material fact.** The Trustee argues that the 5-Hour ENERGY Owners' escrow theory fails because the First Agreement does not specify a grantee; he then asserts that it is not necessary to decide intent. The 5-Hour ENERGY Owners cite no case saying that an escrow may exist without a specified grantee, nor do they squarely address the issue. We nevertheless conclude that the Trustee was not entitled to summary judgment.

In California, escrow agreements and instructions need not be in writing. Claussen v. First Am. Title Guar. Co., 186 Cal. App. 3d 429, 436 (1986) ("We also recognize that escrow instructions may be oral, even when some are in writing and that some escrow instructions may be implicit in the express instructions given." (internal citations omitted)); Zang v. Nw. Title Co., 135 Cal. App. 3d 159, 168 (1982) ("We cannot find a

12

sound basis for concluding that the Financial Code sections were intended to abrogate the principles of contract and agency law which allow for binding oral agreements."). And the First Agreement does not contain a merger clause disclaiming the existence of oral agreements.

The 5-Hour ENERGY Owners submitted declaratory evidence from Debtors' attorney, Mr. Rothman, suggesting that the parties intended to create an escrow account. As the bankruptcy court wrote:

> In the Rothman Declaration, Rothman argues that the parties clearly intended for the Account to be an escrow account because the parties characterized the Account as the "Attorney Escrow Account," the Funds were irrevocably transferred into the Account, and Rothman believed himself to be serving as the escrow agent of the Account at the time the First Agreement was executed.

June 17, 2016 Order Requesting Supplemental Briefing at 4.

As we must on de novo review of a ruling on the Trustee's summary judgment motion, we draw all reasonable inferences in the 5-Hour ENERGY Owners' favor. Doing so, we must acknowledge the possibility that the parties may have orally agreed that the 5-Hour ENERGY Owners would be the specified grantee. And if so, the intent issue identified by the bankruptcy court remains unresolved.

In sum, a genuine dispute of material fact prevents summary judgment on the escrow theory for both parties.

**D.** **We cannot affirm the judgment in the 5-Hour ENERGY Owners' favor based on the legal theories they first raise on appeal.**

The 5-Hour ENERGY Owners also assert new trust law theories on appeal. The Trustee contends that they waived these

13

arguments by not raising them before the bankruptcy court; the 5-Hour ENERGY Owners counter that they may raise them on appeal because we may affirm for any reason.

"[I]n general, 'a federal appellate court does not consider an issue not passed upon below.'" Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014) (quoting Singleton v. Wulff, 428 U.S. 106, 120 (1976)). And a "litigant may waive an issue by failing to raise it in a bankruptcy court." Id. That said, we "have discretion to consider arguments raised for the first time on appeal, but do so only if there are 'exceptional circumstances.'" Id. (quoting El Paso City of Tex. v. Am. W. Airlines, Inc. (In re Am. W. Airlines), 217 F.3d 1161, 1165 (9th Cir. 2000)). As the Ninth Circuit explained:

> We will address a waived issue (1) when review is required to "prevent a miscarriage of justice or to preserve the integrity of the judicial process," (2) "when a new issue arises while appeal is pending because of a change in the law," and (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010) (quoting Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir. 1985)).

Id.

The 5-Hour ENERGY Owners seem to rely on the third exception. Given the fact that we may affirm on any ground supported by the record, we consider the arguments under this exception but conclude that the present summary judgment record does not support these new theories; accordingly, we cannot affirm on alternate grounds.

**Trust theories**. When a debtor does not have an equitable

14

interest in property, such as property held in trust, the property is not estate property. <u>Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)</u>, 13 F.3d 321, 324 (9th Cir. 1994). Accordingly, if Debtors held the Funds as a trustee for the 5-Hour ENERGY Owners, the transfer of the Funds could not be avoided as a preference. We look to state law to determine if a trust exists. <u>Danning v. Bozek (In re Bullion Reserve of N. Am.)</u>, 836 F.2d 1214, 1217 (9th Cir. 1988).

**Constructive trust.** The 5-Hour ENERGY Owners argue that the Funds were in a constructive trust that existed by at least the time of the First Agreement. "A constructive trust is an equitable remedy imposed to prevent unjust enrichment." <u>Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)</u>, 178 B.R. 480, 486 (9th Cir. BAP 1995), <u>aff'd</u>, 104 F.3d 293 (9th Cir. 1997). To impose a constructive trust, three conditions must be shown: "(1) a specific, identifiable property interest, (2) the plaintiff's right to the property interest, and (3) the defendant's acquisition or detention of the property interest by some wrongful act." <u>Higgins v. Higgins</u>, 11 Cal. App. 5th 648, 659 (2017), <u>review denied</u> (July 26, 2017).

The present summary judgment record does not support a constructive trust theory. The 5-Hour ENERGY Owners' other legal theories rely on the First Agreement or freeze order as the source of their interest in the Funds. But here the 5-Hour ENERGY Owners rely on the rights they asserted in their anti-counterfeiting lawsuit. The facts relevant to its new theory were not developed below, and the summary judgment record is devoid of admissible facts about the parties' pre-lawsuit

15

interests in the funds.[4]  The Trustee has also not had an opportunity to develop a position on the argument.  Both are reasons to deny summary judgment.[5]

In sum, we decline to affirm the summary judgment on an alternate, undeveloped, and incomplete constructive trust theory first argued on appeal.

**Express trust.**  The 5-Hour ENERGY Owners next argue that the First Agreement placed the Funds into an irrevocable

[4]  The 5-Hour ENERGY Owners ask us to take judicial notice of a variety of documents.  In particular, they want us to know that one of the debtors was criminally prosecuted for the counterfeiting scheme alleged in the complaint and "plead [sic] guilty to conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce." Appellees' Request for Judicial Notice at 5.  And they assert, with authority, that we can take judicial notice of the truth of the matters asserted therein.  Nevertheless, we deny the request because, as noted above, the focus of the parties' briefing and the bankruptcy court's ruling was on the Debtors' interest in the Funds **after** the First Agreement was signed, not before.  The 5-Hour ENERGY Owners are free to apprise the bankruptcy court of these facts and to make appropriate arguments about them on remand.

[5]  We also note that the 5-Hour ENERGY Owners application of constructive trust law is incomplete.  In bankruptcy cases where a party seeks to impose a constructive trust, "while state law must be the starting point in determining whether a constructive trust may arise in a federal bankruptcy case, that law must be applied in a manner not inconsistent with federal bankruptcy law." In re Unicom Computer Corp., 13 F.3d at 325 n.6.  The bankruptcy court, thus, must consider whether imposing a constructive trust is against the federal bankruptcy policy favoring a ratable distribution to all creditors. Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.), 645 F.2d 794, 798 (9th Cir. 1981) (Bankruptcy Act case).  In their opening brief, where they first articulate a constructive trust theory, the 5-Hour ENERGY Owners never discuss the second part of the analysis.

16

express trust. "Under California law an express trust requires five elements: 1) present intent to create a trust, 2) trustee, 3) trust property, 4) a proper legal purpose, and 5) a beneficiary." Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 379 n.6 (9th Cir. BAP 2011) (citing Cal. Prob. Code §§ 15201-15205 and Keitel v. Heubel, 103 Cal. App. 4th 324, 337 (2002)).

The summary judgment record does not support an express trust theory. The bankruptcy court identified intent as a genuine dispute of material fact. The record on summary judgment does not suggest to the contrary. Accordingly, we decline to affirm on that ground.

**E. The bankruptcy court erred in granting summary judgment in favor of the 5-Hour ENERGY Owners when it declined to apply relevant state law to determine the estate's interest in the Funds.**

We finally turn to the bankruptcy court's reason for granting the 5-Hour ENERGY Owners summary judgment. The bankruptcy court, side-stepping the escrow issue, determined that choice of state law was immaterial because "the material language of the First Agreement Order is unambiguous and the only remaining law to apply is federal bankruptcy law." Mem. Dec. at 3-4. It continued:

> The operative legal question is whether the Funds would have been property of the estate if Debtors had filed bankruptcy ninety days earlier, at which time the Funds were held in the Account. If the Funds would not have become property of the estate if Debtors filed bankruptcy while the Funds were held in the First Account, then it necessarily follows that no transfer of property of the estate occurred.

Mem. Dec. at 4. The bankruptcy court determined that, although

17

the First Agreement divested Debtors of some interest in the Funds, it did not "divest Debtors of all interest in the Funds." Mem. Dec. at 6. Accordingly, "while Debtors retained some interest in the Funds ninety days prior to the filing of the bankruptcy petition, that interest was limited." Id.

To determine the boundaries of that interest, the bankruptcy court looked at two cases, Pixton v. B&B Plastics, Inc. (In re B&B Plastics, Inc.), 2005 WL 3198656, at *1 (Bankr. S.D. Fla. Aug. 10, 2005), and Dzikowski v. NASD Regulation, Inc. (In re Scanlon), 239 F.3d 1195 (7th Cir. 2001). And it reasoned that the present facts fell somewhere between the two but that they were closer to those in In re Scanlon. Mem. Dec. at 8. It explained: "While appearing to lack the degree of disbursement specificity present in Scanlon, this case similarly presents a situation in which [Debtors] were divested of any meaningful oversight or unilateral control over the Funds." Id.

It continued: "11 U.S.C. § 541(a) . . . restricts the bankruptcy estate's assumption of the debtor's interests to the interests that are held by the debtor." Id. Thus, to the extent Debtors' interest was limited, so also was the Trustee's. Here, "[w]hile the Funds were held in the Account, Debtors did not have the legal authority to utilize or direct the Funds." Id. As a result, "the consensual release of the Funds from the Account to the [the 5-Hour ENERGY Owners] was not a transfer that deprived the bankruptcy estate of value to be distributed to creditors, and, therefore, it cannot be avoided under the 'diminution of estate' doctrine." Id. For this proposition, the bankruptcy court cited Adams v. Anderson, (In re Superior

18

Stamp & Coin Corporation), 223 F.3d 1004, 1007 (9th Cir. 2000); Carlson v. Farmers Home Administration (In re Newcomb), 744 F.2d 621, 625 (8th Cir. 1984); and Collier on Bankruptcy ¶ 547.03[2][b] (16th ed. 2015)).

We conclude that this reasoning is in error.

First, the bankruptcy court wrongly concluded that the only law left to apply was federal bankruptcy law and that state law was immaterial. As the bankruptcy court recognized, the operative legal question is whether the Funds were property of the estate. True, determining "whether an interest claimed by [a] debtor is 'property of the estate' is a federal question to be decided by federal law . . . ." McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir. 2000). But the contours of the estate's and debtor's interest in property are determined by reference to nonbankruptcy, usually state, law. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451 (2007) (citing Butner v. United States, 440 U.S. 48, 54–55 (1979)); In re Pettit, 217 F.3d at 1078 ("[B]ankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case."). Accordingly, the bankruptcy court's conclusion that it need not apply state law was erroneous.

The cases the bankruptcy court relied on underscore this point. Both In re B&B Plastics, Inc. and In re Scanlon apply state law: Florida law. See In re Scanlon, 239 F.3d at 1197 ("The extent and validity of the debtor's interest in property

19

is a question of state law.  Under Florida law . . . .")
(citations and internal quotation marks omitted); In re B&B
Plastics, Inc., 2005 WL 3198656, at *4 (quoting In re Scanlon,
239 F.3d at 1197).  Both cases involved alleged or actual
escrows and escrow agreements (In re B&B Plastics, Inc. also
discusses in custodia legis).  As a result, the In re B&B
Plastics, Inc. and In re Scanlon analyses of property interests
under Florida law do not dictate the result of an analysis of
property interests under the law of another state.[6]

The "diminution of the estate" doctrine does not compel a
different result.  Under it,

> a transfer of an interest of the debtor in property
> occurs where the transfer "diminish[es] directly or
> indirectly the fund to which creditors of the same
> class can legally resort for the payment of their
> debts, to such an extent that it is impossible for
> other creditors of the same class to obtain as great a
> percentage as the favored one."

Adams, 223 F.3d at 1007 (quoting Hansen v. MacDonald Meat Co.
(In re Kemp Pacific Fisheries Inc.), 16 F.3d 313, 316 (9th Cir.
1994)).  Here, the bankruptcy court's analysis assumes that
because Debtors were divested of exclusive control over the
Funds, they were divested of all leverage over the Funds.  They
were not.  They could, and did, negotiate a settlement with the
5-Hour ENERGY Owners.  That settlement involved Debtors awarding
all interest in the Funds to the 5-Hour ENERGY Owners.  But we
can safely assume that Debtors' motivations in settling differed

---

[6] True, if the substantive law of the various states are
similar or identical, then the cases may be persuasive.  But it
is for the trial court to make this determination in the first
instance.

from the motivations of their creditors and the Trustee. Debtors risked a nondischargeable judgment; the Trustee would not be burdened with fears of nondischargeability if he were negotiating resolution. The Trustee may have been able to negotiate a different result, one in which the 5-Hour ENERGY Owners did not receive all of the Funds.[7]

Thus, the bankruptcy court incorrectly concluded that it did not need to identify and apply relevant state law in order to determine the estate's interest in the Funds. Accordingly, we REVERSE in part.

## CONCLUSION

For the reasons set forth above, we conclude that although the bankruptcy court was correct in denying summary judgment on various theories, it erroneously granted summary judgment in the 5-Hour ENERGY Owners' favor. Accordingly, we AFFIRM all denials of summary judgment, REVERSE the grant of summary judgment, VACATE the judgment, and REMAND for further proceedings.

---

[7] The other cases cited by the bankruptcy court are not applicable. Adams involved the application of the earmarking exception to the diminution of the estate doctrine. 223 F.3d at 1009-11. That exception does not apply here. And In re Newcomb involved an escrow under Missouri law. 744 F.2d at 625-26.

21